## HODGE *vs.* ELLIS, guardian.

[This case was argued at the last term, and the decision reserved.]

A man who had his life insured in two companies for $3,000 and $5,000 respectively, both payable to his minor adopted daughter, being in bad health and failing circumstances, borrowed money from another to pay premiums, and assigned to him the smaller policy. The contract stated that advances had been made to pay past assessments, and further advances might be made to pay future assessments, and the policy or ticket was assigned as collateral security, with power to hold and collect it for the purpose of reimbursing the assignee. A short time thereafter, the assured made a second written contract with the same person. This recited that such person having agreed and guaranteed thereafter to pay the assessments on both certificates or policies as they should become due, and not to suffer them to lapse or become void, "I hereby agree that upon the collection of these policies, that he shall reserve for his own use and benefit a sum not exceeding twenty-five hundred dollars, or in case any circumstances should prevent his personal collection of these policies, then the party collecting shall pay to him, his heirs and assigns the sum specified. It is understood that the obligation assumed by J. R. Hodge (the party of the second part) in this transaction shall not exceed in amount twenty-five hundred dollars." The insured died, and the other party became his executor and guardian of the child. As guardian he collected the policies. He filed a bill, praying to be allowed to retain as his own $2,500 from the fund:

*Held*, that the second contract was not a contract to pay $2,500 in any event, regardless of the amount of assessments paid; nor was the

amount to be retained limited to the payments made, with interest thereon; but an equitable sum should be allowed for his services in watching the business and saving the insurance for the beneficiary.

(*a.*) There was no wagering of policies in either contract.

(*b.*) Although the father may not have had the strict legal right to make the second contract binding on the minor, yet equity will decree that the ward do what is right towards one who preserved the fund for her.

(*c.*) This court fixes $1,000 as a reasonable amount to be paid, in addition to the remuneration allowed complainant as executor and guardian. The question of any additional fee to be paid to the solicitor and guardian *ad litem* of the minor for services in this court is not concluded; nor is the question of allowing fees to others passed upon.

March 9, 1886.

Contracts. Insurance. Parent and Child. Equity Before Judge HAMMOND. Fulton Superior Court. March Term, 1885.

Reported in the decision.

R. P. TRIPPE & SON, for plaintiff in error

W. D. ELLIS, for defendant.

JACKSON, Chief Justice.

Hodge, executor of Dunham, and guardian of his adopted daughter, brought a bill in equity against that daughter, with a prayer that he be allowed to retain in his hands as his own twenty-five hundred dollars out of eight thousand which he had collected for her out of the Royal Arcanum and American Legion of Honor, two mutual benefit life insurance associations, upon a contract made by her father, the insured, during his lifetime.

On demurrer to this bill by Ellis, guardian *ad litem* for the daughter, and on agreement that the court should make a decree on the bill and one deposition of one Scott, without a jury, at the first term, subject to review in this court,

76-18

a decree was made by the chancellor, and Hodge being dissatisfied with it, brings the case here.

Dunham had insured his life in those companies, in one for three and in the other for five thousand dollars, and had paid premiums thereon for some time, when, being in failing circumstances, and not having money, he borrowed from Hodge some sixty-five dollars in all to pay premiums, and made a contract assigning the smaller policy to secure Hodge for the money borrowed, and other money which might be advanced in future in premiums on that policy.

A short time thereafter, he made another contract with Hodge to pay premiums on both policies, in consideration of being paid not exceeding twenty-five hundred dollars out of the policies, and the contract providing that he should not be bound to keep up the policy by paying premiums amounting in all to more than twenty-five hundred dollars. It is for twenty-five hundred dollars, under this contract, that the suit is brought.

The court decreed that he should be paid and retain out of this fund collected by him for his ward three hundred and three dollars, with interest thereon from date of payment, it being the exact amount he had paid out upon premiums and loaned therefor added together.

The question is, is that decree just and equitable? The guardian *ad litem* says it is. The guardian appointed by the ordinary and executor of the will of the deceased father says it is not, but that he ought to have the whole twenty-five hundred dollars; and that is the issue for this court to try.

1. The first thing to be done is to ascertain what the contract is between deceased and the executor of his will and guardian of his child. What is the construction which a court of equity will put thereon?

There are two contracts made within three months of each other. It is well to set both out in full.

The first was made in March, 1883, the day of the month being blank, and is as follows:

"GEORGIA, Fulton County.

J. R. Hodge, of said county, having advanced to me heretofore, at different times, the sum of sixty-five dollars and ninety-five cents for the purpose of paying past assessments on certificate No. 25,734 in the Royal Arcanum of Boston, Massachusetts, and which were by me so paid; and whereas, the said J. R. Hodge may in the future pay the future assessments on said certificate: Now, for security of what has been paid, and may be so paid in the future, said certificate is hereby assigned and delivered to said Hodge as collateral security for the same, with the power to collect the amount of the same, or hold the same until he shall be fully reimbursed for said payments, and prospective payments, in the event that I should die in arrears for said payments of assessments already made or to be made.

" In witness whereof," etc.

Signed and sealed by J. L. Dunham.

The above is an agreement to pay back the amount paid or to be paid by Hodge, on the assessments of that policy, and the assignment of it is made as collateral security to reimburse Hodge, if Dunham should be behind in paying it when he dies.

The other, and that sued on specially, is dated the 25th of June, 1883, and is as follows :

"GEORGIA, Fulton County.

J. R. Hodge, of said county, having this day agreed and guaranteed that he will hereafter, as they become due, pay the assessments upon the Royal Arcanum certificate No. 25,734, for three thousand dollars, and the Legion of Honor certificate No. 14,636, for five thousand dollars, both issued to me, and made in favor of Ella J. Dunham, and that he will in no way suffer said policies to lapse or become void, I hereby agree that, upon the collection of these policies, that he shall reserve for his own use and benefit a sum not exceeding twenty-five hundred dollars, or in case any circumstances should prevent his personal collection of these policies, then the party collecting shall pay to him, his heirs and assigns the sum specified. It is understood that the obligation assumed by J. R. Hodge in this transaction shall not exceed in amount twenty-five hundred dollars.

" In witness," etc.

Signed by J L. Dunham.

Construing this latter contract in connection with the former, made in March preceding, what does it mean ? It is not a contract to pay $2,500 without regard to what Hodge may expend. Otherwise, the words " not exceed-.

ing" would not have been inserted to qualify the payment of $2,500. If Hodge was to receive in any event that sum, then those words "not exceeding" would be absolutely worthless and meaningless. They must have been inserted for a purpose. What purpose? We think to show that the sum he was to receive should depend upon the expenditures he should make, which would depend on the duration of life of the insured and the number and amount of the assessments made upon Dunham, the insured, and which Hodge had obligated himself to pay, up to twenty five hundred dollars. That restriction on his own payments out has a bearing on the obligation of Dunham and his adopted daughter to pay him back. The stipulation on the one side is to pay assessments only up to $2,500; on the other side, the stipulation is to pay him only up to that sum, no more in any event, but by no means the whole of it, without regard to what Hodge had paid out of his guarantee to go as far as $2,500. The first contract contemplated that he should only keep one of the policies alive by paying assessments on that one alone; three months afterwards he stipulates to keep up both policies, not, however, till the death of the insured, but only until $2,500 was exhausted by him in paying assessments upon both policies. If the last contract had stipulated that Hodge should prevent both policies from lapse and forfeiture till the death of Dunham, then, even with the qualifying words "not exceeding" being in the contract, it might be contended, with some show of reason, that Hodge ought in equity to recover $2,500.00, because his risk was more than that sum, dependent on the duration of life and the amount of assessments made by the companies; but when, in no event, he could be bound to pay but $2,500.00, and the probabilities from the condition of Dunham's health were that he would pay much less, it would look something like " heads I win, tails you lose;" in no event could he lose anything but interest, whilst all the probabilities were that he would win largely.

Doubtless views like this led the court below to decree to Hodge only the principal and interest of the money he actually expended.

We cannot concur, however, in that view, because that was the first contract, and had it been intended to be also the second contract, the amount to be paid Hodge would have been specified as the amount he had advanced and should thereafter advance, as was the specification in the first contract. That both contracts must be inspected and considered to reach the meaning of the parties, we consider clear, because they were both upon the same subject-matter, both were made nearly at the same time, both must necessarily have been sued on in order to reach the former advances as well as future payments of Hodge— the advances formerly made being alluded to only in the first contract, and both are exhibited and made part of the bill.

Moreover, the advances and loans formerly made by Hodge alone made him a creditor of Dunham, and gave him the insurable interest in the life of Dunham, which drew from that interest in the policy the sting of a wagering policy or an appearance of something like it.

Construing, then, the two contracts together, the first at least as necessary to be invoked to arrive at the true meaning of the last, we conclude that the true intent and meaning of the last contract, read in the light of its own words and the words of the first contract, is that Hodge should not, no matter how little he paid of the twenty-five hundred dollars he agreed to expend, and how short a time he was watching both policies and receiving, investigating and paying the assessments, receive all the twenty-five hundred dollars, not exceeding which sum Dunham agreed that he should have for his attention and payments; nor yet should he be limited only to the money he actually expended, with the interest thereon. His services in watching this business in the case of one in bad health, who could not well attend to it, his coming to the rescue

of this sinking fortune of this adopted daughter, his saving this waif on a vessel going down but for his efforts to save it, require equitably, we think, something more than the mere sums he paid out from time to time with interest thereon.

It will be observed that the law in respect to wagering policies in their inception, and the question, on which courts divide, whether the wagering nature of an assignment of a policy, good and valid in the beginning when first issued, remains good, though the assignee took it on a sort of wager or chance, is not strictly in this case.    There is no assignment of either policy in the last contract.    The money for the loss of life of assured was not collected by Hodge, as assignee, at all, but as guardian.    The first contract did assign the policy it related to, but it was a good and valid assignment, under any view of the law, by either ruling of the two lines of the decision.    It was for past indebtedness and future indebtedness paid and to be paid on assessment, and it stipulated only for arrears of indebtedness for the money so loaned to Dunham and applied to premiums or assessments.    So that this assignment, under the first contract, appears all right in law.    The other is no assignment at all.    It is a contract made by a father for his infant daughter, to be paid by her out of a fund which thereby he secured to her, and without which the fund was greatly endangered, if it would not be absolutely lost forever.

It was a good contract for the orphan; and though the father may not have had any strict legal right to make it, yet the daughter has reaped the fruit of his providence; and equity, having power to make everybody do right, and especially the wards of chancery under its peculiar jurisdiction, whilst it will protect them in every right, yet it will not allow them to do wrong, and it will make her pay what is just and equitable to the man who saved her fortune for her at the solicitation of, and under contract with, that father.

Therefore, in view of all the facts of this case, this court will make a final disposition of it, under section 4284 of the Code, and adjudge that the court below be reversed, and that a decree be entered, on the return of this case to that court, by it, that plaintiff do retain of the fund in his hands belonging to the ward, under the claim set up in the bill, the sum of one thousand dollars in full payment of all moneys due him from these contracts in lieu of the sum decreed by the court below.

Inasmuch as Hodge is executor of Dunham s wil₁, and the guardian of the respondent, and that fact of executorship doubtless sprang out of this transaction, and the guardianship followed it, we think such sum of one thousand dollars, in addition to such remuneration as the law gives him as executor and guardian, to be an equitable and just settlement between him and his ward. We do not mean to conclude the court below, in respect to any additional fee it may decree the solicitor in equity and guardian *ad litem* for the infant respondent for services in this court, in addition to that already paid him; nor do we make any intimation on the question of allowing any fees to others. That question is not before us, and is not decided.

See, for plaintiff in error: 1 Amb., 418; 2 Story Eq., §1357; 1 Pom. Eq., §509; Code of Ga., §2731; Ewell's Lead. Cas., 171, 180; 1 Smith's L. Cas., 797; 1 Add. Con., §161; Code, §§2819, 2821, 2795; 22 Barb., 9; 70 Penn., 450; 3 Kernan, 31; 23 Am. R., 497 note; 94 U. S., 457.

For defendant.: Code, §§2818, 2820 ; May on Ins., §§110, 33, 398, 392, 389; 61 *Ga.*, 658; 38 Am. R., 289, notes; 27 *Id.*, 774; 4 *Id.*, 49; 99 Mass., 157, 154; 44 Am. R., 285; 104 U. S., 775; 26 Am. R., 761; 13 *Id.*, 313; 26 *Id.*, 7611; 101 Mass., 566; 41 Ind., 116.

Judgment reversed.