THE SUPREME LODGE OF THE KNIGHTS OF PYTHIAS v. LLOYD B. FERRELL, *Appellant*, and EDITH M. STANLEY (formerly Edith M. Ferrell), *Appellee*.

No. 16,701.

SYLLABUS BY THE COURT.

1. STATUTE OF FRAUDS—*Executed Parol Antenuptial Contract.* In an action by a widow to maintain her rights derived through the execution of a parol antenuptial contract, the contract having been executed by both parties thereto, the statute of frauds has no application. Such executed contract is valid.

2. FRATERNAL INSURANCE—*Change of Beneficiary—Antenuptial Agreement.* Where in the part performance of an antenuptial contract a husband procures a change in a certificate of insurance, in which his children were the sole beneficiaries, so as to make his wife an equal beneficiary with the children, and where she has fully executed the antenuptial contract on her part, she thereby obtains an equitable interest in the certificate; and he can not thereafter, without her consent, surrender the certificate and obtain the issuance of a new one in which a third party is named as the sole beneficiary, and thus

devest her of her interest in the certificate which was procured pursuant to such contract.

3. ——— *Possession of Beneficiary Certificate.* The rights of a beneficiary named in a certificate of insurance in nowise depend upon the possession thereof by the beneficiary.

Appeal from Sedgwick district court. Opinion filed December 10, 1910. Affirmed.

*Kos Harris,* and *V. Harris,* for the appellant.

*Walter T. Matson,* and *Dempster O. Potts,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The Supreme Lodge of the Knights of Pythias, a fraternal insurance corporation, commenced this action and in its petition alleged that one George Ferrell, deceased, was at the time of his death a member in good standing of the organization; that he had a benefit certificate for $3000; that the amount was due upon the certificate, and that the corporation was ready to pay, but that there was a dispute as to who among the parties whom it made defendants in the action, namely, Lloyd B. Ferrell, Edith M. Stanley (formerly Ferrell), Adele C. Ferrell and Paul H. Ferrell, was entitled to receive payment. Lloyd B. Ferrell answered and alleged that he was entitled to the entire sum of $3000 under the certificate. Edith M. Stanley answered and alleged that she was entitled to the sum of $1000 of the amount of the certificate. Defendants Adele C. Ferrell and Paul H. Ferrell did not appear.

The undisputed facts are that about May, 1885, George Ferrell became a member of the association and took out a certificate for $3000, payable to his wife, Mary E. Ferrell; that sometime prior to the 14th day of June, 1899, Mary E. Ferrell died, leaving two children, Adele C. Ferrell and Paul H. Ferrell; that on June 14, 1899, George Ferrell surrendered the certificate and took out a new one, naming his two children

as the beneficiaries; that on the 10th day of January, 1901, he surrendered the second certificate and took out a new one for the same amount, payable to Edith M. Ferrell, his then wife, and to his two children, in the sum of $1000 to each; that the last-named certificate remained in force until about the 5th of December, 1907, when George Ferrell surrendered it and took out a new certificate for the same amount, making Lloyd B. Ferrell, his brother, the sole beneficiary; and that shortly thereafter, and before the commencement of this action, George Ferrell died.

In her answer Edith M. Stanley alleged that prior to her marriage to George Ferrell, and at a time when his two children stood as the beneficiaries of the certificate, George Ferrell proposed to her that if she would marry him and care for his children he would provide her a home and care for her, and would have the certificate changed so that she should receive $1000 from the benefit certificate and each of the children $1000 in case of his death before her death; that in consideration of such promise she consented to marry him, and did marry him, and that he executed the antenuptial contract by surrendering the old certificate and procuring a new one to be issued in accordance with the terms of his agreement; and that the subsequent change of the certificate, making it payable entirely to Lloyd B. Ferrell, was without her consent and in violation of her rights under the contract.

This claim Lloyd B. Ferrell denied, and a trial of the issue thus formed was had to the court and a jury until Edith M. Stanley had offered her evidence, Lloyd B. Ferrell had demurred thereto and the court had overruled the demurrer, whereupon the parties agreed that the jury should be discharged and the case decided by the court, Lloyd B. Ferrell reserving his exceptions to the ruling on the demurrer to the evidence. The court rendered judgment in favor of Edith M. Stanley as to

the amount claimed. To reverse this judgment Lloyd B. Ferrell brings the case here.

Edith M. Stanley, being called as a witness in her own behalf, was asked to relate the conversation by which the alleged antenuptial contract was made. An objection was made thereto on the grounds that the contract, not being in writing, was void. The objection was overruled, and the ruling is assigned as an error. Section 3838 of the General Statutes of 1909 (Laws 1905, ch. 266, § 1), being a portion of the statutes to prevent frauds and perjuries, reads in part: "No action shall be brought whereby . . . to charge any person upon any agreement made upon consideration of marriage, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." It is urged that this provision makes the contract absolutely void, and for that reason proof of it should not be allowed. The statute does not render the contract void; but to prevent the perpetration of frauds and perjuries, to which the nature of the transaction lends great inducement and facility, it is provided that no action shall be maintained on such a contract unless it is in writing. The reason that the statutory provision fails where the antenuptial contract has been fully executed is that proof of the rights of the parties under the contract no longer rests upon the testimony of the party asserting it, or upon the statement of others who may have heard it or claimed to have heard it. Where the contract has been fully executed, as this antenuptial agreement is claimed to have been, the action is not upon the original contract, but is usually to retain the benefits which have accrued therefrom. The original contract in such an action is immaterial, except to explain the consideration for which the benefits were received. In some states it has

Knights of Pythias v. Ferrell.

been held that an antenuptial contract is no considera-
tion for a marriage, but that has never been held by
this court. (*Hafer v. Hafer*, 33 Kan. 449; *Neddo v.*
*Neddo*, 56 Kan. 507.)

In *Weld v. Weld*, 71 Kan. 622, it was said:

"An oral agreement, made in consideration of mar-
riage, that after the marriage a debt of one of the con-
tracting parties to the other shall be mutually regarded
as paid is fully performed when the marriage takes
place, and is not thereafter affected by the statute of
frauds." (Syllabus.)

In the opinion it was said:

"The statute of frauds does not render void the verbal
contracts to which it refers. They are valid for all
purposes except that of suit. (*Stout v. Ennis*, 28 Kan.
706.) The parties may perform them if they desire,
and when performed the statute has no application to
them. (29 A. & E. Encycl. of L. 829, 941.)" (p. 624.)

The objection was properly overruled.

It is contended that the court erred in permitting
this witness to testify, referring to her husband and
the policy, that "he gave it to me." It is contended
that this was a transaction between the witness and
her husband during the time that the marriage relation
existed, and that the opposing party, Lloyd B. Ferrell,
was the legal representative of the deceased. The pro-
vision of the statute invoked to sustain this objection is
a part of section 320 of the code of 1909, and reads:

"No party shall be allowed to testify in his own be-
half in regard to any transaction or communication had
personally by such party with a deceased person, when
the adverse party is the executor, administrator, heir
at law, next of kin, surviving partner or assignee of
such deceased person, where they have acquired title
to the cause of action immediately from such deceased
person."

On the other hand, it is contended that Lloyd B.
Ferrell did not acquire title to the cause of action im-
mediately from the deceased; that the deceased had no

title to the certificate, and could derive no benefit therefrom; that he had only the naked power under the certificate of designating or appointing the beneficiary, under the rules of the corporation; that the certificate did not pass from the deceased to Lloyd B. Ferrell by assignment or for any consideration paid or agreed to be paid therefor by Lloyd B. Ferrell.

We are inclined in favor of the latter contention, but regard this controversy as quite immaterial.

The objection that the witness should not have been allowed to testify to this statement on the ground that she was the wife of the deceased at the time it is said to have been made should probably have been sustained; but if it was erroneous to allow the statement, it was likewise immaterial.

If the deceased contracted in consideration of marriage to change the certificate, as claimed, and Edith M. Stanley performed her part of the contract relying upon such agreement, and thereafter her husband performed his part of the contract by having the certificate changed as he agreed to do, the contract thereby became fully executed, and the wife had a vested interest in that policy, of which her husband could not devest her without her consent. (*Stronge v. Knights of Pythias,* 189 N. Y. 346, 12 L. R. A., n. s., 1206, case note; *Bunnell v. Shilling,* 17 Can. L. T. 121.) It is immaterial whether he gave her the policy or whether she ever saw it. Probably three-fourths of the beneficiaries in insurance policies never even see, much less have in their possession, the policies which are made for their benefit. Indeed, under the circumstances of that case, it was held in *Weld v. Weld,* 71 Kan. 622, in substance, that where an antenuptial contract is made, and the marriage is celebrated in reliance thereon, the marriage *ipso facto* discharges the previously existing indebtedness between the contracting parties in accordance with the antenuptial agreement. In this case Edith M. Stanley produced in court and introduced in evidence the certificate

Burgess v. Railway Co.

which she claimed was made in execution of the contract, and which designated her and the two children as beneficiaries.  How she came by that certificate is quite immaterial.  The presumption would probably be that she came by it lawfully.  But, as before stated, the material fact in determining whether George Ferrell executed the antenuptial contract on his part is whether he procured the issuance of the certificate in accordance with the terms of the contract.  The marriage on her part and the procuring of the certificate in accordance with the terms of the agreement by him executed the contract entirely.

The order of the court overruling the demurrer to the evidence of Edith M. Stanley is also assigned as error, but it follows from what we have said that no error can be predicated thereon.

We find no prejudicial error in the proceedings, and the judgment is affirmed.