No. 20,044.

R. H. BROWN, *Appellant*, v. THE MODERN WOODMEN OF AMERICA et al., (SEWALL G. BROWN et al., *Appellees*).

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Contract of Member to Change Beneficiary— Change Not Complete—Rival Claimants—Equities.* Generally the rights of holders and beneficiaries under fraternal benefit certificates rest solely upon the contract between the member and the association as found in its constitution and by-laws. But when potent and manifest equities appear in favor of some of the rival claimants by reason of contracts made and carried out with the deceased member, the association raising no objection, the contest may become one purely for equitable cognizance and determination.

2. SAME—*Right of Member to Change Beneficiary.* While ordinarily the member has no vested right in the fund, still by an agreement to change beneficiaries in consideration of funds advanced he may so bind himself as to preclude his beneficiary or heirs from asserting their claim to the proceeds against a party who advanced large sums on the strength of such agreement, although a completed change of beneficiary was not made in accordance with the constitution and by-laws of the association.

3. SAME—*Contract to Change Beneficiary—Money Loaned—Premiums Advanced—Rights of Claimants Determined upon Equitable Considerations.* The holder of a fraternal benefit certificate in consideration of loans advanced and to be advanced and premiums paid and to be paid by his brother made him beneficiary. Later a son of the brother repaid his father and made further advancements to the member upon consideration of being substituted as beneficiary. The request for cancellation of the certificate and issuance of a new one with the nephew as beneficiary was duly executed by the member and turned over to the brother, who delivered it to his son, but it was never transmitted to the association. After the member's death, the nephew who had advanced considerably more than his promised portion of the proceeds of the certificate, and two sons of the former member who died leaving no beneficiary, became rival claimants for such portion of the fund, the association paying the money into court and raising no question as to change of beneficiary. Upon the amended petition and

opening statement for plaintiff, disclosing substantially the foregoing, judgment was rendered for the defendants. *Held*, error, and that all the evidence should be received and the cause determined upon equitable considerations.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed April 8, 1916. Reversed.

*John E. Hessin,* and *John Clarke Hessin,* both of Manhattan, for the appellant.

*F. B. Dawes,* and *R. C. Miller,* both of Clay Center, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff appeals from a judgment denying his right to certain proceeds of a policy issued by the Modern Woodmen of America. From the amended petition and the opening statement it appears that R. G. Brown, in 1898, wrote to his uncle, A. B. Brown requesting financial assistance. From that time up to 1902 he received such aid to the amount of $803.53, when, calling for further aid, he agreed in order to secure past and future advances to take out a $3000 policy, making his wife a beneficiary to the extent of $500, and his uncle, A. B. Brown to the amount of $2500, the uncle agreeing to take such policy as collateral security and to keep up the premiums and assessments. The policy was issued, received and retained by A. B. Brown, and he, by April, 1905, had paid out by way of advancements, premiums and assessments $1486.56. At this time the plaintiff, R. H. Brown, son of A. B. Brown, went with his father to see R. G. Brown, and the latter was advised that A. B. Brown could no longer carry out the contract, he being then 77 years of age and out of employment. It was agreed orally that the policy should be sold and assigned to R. H. Brown for $1486.56, which he was to pay his father, he to continue the assessments and premiums and to advance such sums to R. G. Brown as he could for the latter's support and maintenance, R. G. Brown agreeing to secure him for his interest and for all future advancements by having the policy canceled and a new one issued making the wife of R. H. Brown beneficiary for $500 and R. H. Brown for $2500. In pursuance of this agreement R. G. Brown indorsed on the

policy a request to cancel it and to issue a new one as already indicated, acknowledging such request before a notary public and delivering it to A. B. Brown to take to some camp clerk, A. B. Brown agreeing to pay the necessary fifty cents to have the change made. R. H. Brown paid to his father the advancements made by him, and also advanced to R. G. Brown, before his death in 1913, $620, making in all $3025.56 paid by him. The policy was never delivered to the Modern Woodmen. A. B. Brown instead of turning it into some head camp went on a journey, and upon his return gave it to the plaintiff in a sealed envelope which was not opened until after his death. The plaintiff brought this suit to recover on the policy, the issues were made up, trial was begun, a jury impaneled and an opening statement made for the plaintiff, whereupon a motion for judgment on the statement and pleadings was made and sustained. The society paid the money into court and was discharged, the contest over the $2500 being between the plaintiff and two sons of R. G. Brown.

The by-laws provided that for a member in good standing to change beneficiaries he was required to pay to the camp clerk a fee of fifty cents and deliver his certificate with the surrender clause on the back thereof duly filled out and executed by him, designating therein the desired change, such execution to be in the presence of and attested by the camp clerk or by some person authorized by law to administer oaths and take acknowledgments. No change was to be effective until the old certificate had been delivered to the head clerk and a new one issued during the lifetime of the member. The by-law in force in 1905 provided that no change in the designation of beneficiaries should be of binding force unless made in compliance with the provisions referred to. In the revision of 1911-1912 this was enlarged to read that—

"Any attempt by a member to change the payee of the benefits of his Benefit Certificate by will or other testamentary document, contract, agreement, assignment or otherwise than by strict compliance with the provisions of this section relating to change of beneficiary shall be absolutely null and void. Any agreement entered into by the member, by the terms of which he attempts to assign the benefits agreed to be paid under the certificate or any part thereof, to any other person or persons than the beneficiary or beneficiaries designated in the certificate, shall be absolutely void; as shall any agreement entered into by which the

member agrees not to change his beneficiary if he afterwards violates such agreement and exercises his right to at any time before death change his beneficiary."

The member lived about eight years after executing the indorsement, the brother about four years.

Many decisions from other states are brought forward to uphold the doctrine that the matter is purely one of contract and that the equities of a given case will not justify a departure from that principle. Both sides also invoke former decisions of this court. The plaintiff calls attention to *Savage v. Modern Woodmen,* 84 Kan. 63, 113 Pac. 802, holding that one who helps to pay the assessments upon a certificate in his favor under an agreement with the holder that the beneficiary will not "be changed, acquires a vested interest, and the association having paid the money into court, such original beneficiary can recover, notwithstanding the beneficiary was changed. There for ten years the wife had helped pay the assessments, the assured changing beneficiaries only three days before his death. Here for eleven years the brother and then his son, the plaintiff, not only paid the premiums and assessments, but completed advancements amounting in all to much more than could possibly come to either beneficiary under the certificate. And all this was done in pursuance of agreements to secure the benefactors by making them the beneficiaries. The defendants rely largely on *Kemper v. Modern Woodmen,* 70 Kan. 119, 78 Pac. 452. In that case the member held a certificate payable at death to his wife. He duly executed a proper blank form requesting a new certificate payable to his brother. This, with the fee, was remitted, but one day before they were received the holder died. The widow sued and recovered. Then the brother's administrator sued the association, and it was held that he could not prevail, because his right rested in contract, and the method of changing beneficiaries provided in the by-laws constituting the contract with the holder and the association was not followed. It was remarked that the new certificate was never delivered and that the member died before his request for a change was received. The Titsworth case (*Titsworth v. Titsworth,* 40 Kan. 571, 20 Pac. 213) was distinguished as one in which the new certificate had been issued and delivered in the lifetime of the member, and it was said

in the Kemper case: "This is a controversy directly between the new beneficiary and the society which insured the life of the deceased" (p. 124), a fact which differentiates the Kemper case from this. It was said also that the court was merely upholding the stipulations of the member's contract that no change in beneficiary should take effect until the delivery to him of the new certificate. *Pilcher v. Puckett*, 77 Kan. 284, 94 Pac. 132, involved the right to the proceeds of a certificate in the Modern Woodmen of America held by William Pilcher payable to his wife. The wife departed this life and the husband made no change in beneficiary except an attempted change by will. The contest was between his heirs and his step-children, the association having paid the money into court. It was held that a member has no interest in the fund, simply the power of appointment, which if not exercised becomes inoperative, and that the attempt to dispose of the fund by will was nugatory, not being the manner provided in the by-laws. It was said:

"Cases may arise where equity would aid in an attempted but uncompleted change of beneficiary—where the assured had done his part in making the substitution in accordance with the rules and by-laws of the order, but no such case is presented here." (p. 290.)

*Boice v. Shepard*, 78 Kan. 308, 96 Pac. 485, was another case in which the money was paid into court, the contest being between rival claimants, and it was again held that the insured has no interest in the fund.

While generally in case of the holder's death the fund goes to his beneficiary or to his heirs, and not to his administrator, and can not be disposed of by his will, still if he, having received large benefits, in order to secure the person bestowing them, agrees to name him as beneficiary, then it would seem that an interest or equity may arise as in the Savage case. In *Knights of Pythias v. Ferrell*, 83 Kan. 491, 112 Pac. 155, the holder of a certificate in part performance of an antenuptial contract procured a change making his wife equal beneficiary with his children. Having executed the contract on her part, it was held that she had a vested interest in the policy, of which the husband could not divest her without her consent.

The recent well-considered opinion in *Mod. Woodmen of America v. Headle et al.*, 88 Vt. 37, 90 Atl. 893, supports the

contention of the defendants and holds, among other things, that the power of appointment can be exercised only in the manner provided in the by-laws, and that the society by bringing a bill of interpleader and paying the fund into court does not waive the requirements of the by-laws since the rights of the parties became fixed at the moment of the member's death. (See, also, Note, L. R. A., n. s., 1916 A, 877, 879.) But neither in this nor in any of the other cases relied upon by the defendants do we find conditions similar to those presented here. Neither does the case turn on either one of the three exceptions discussed by Mr. Justice Brown in *Supreme Conclave, Royal Adelphia, v. Capella,* 41 Fed. 1, but upon the effect to be given to the agreements entered into between the member and his benefactors. The decision in the Ferrell case (83 Kan. 491, 496) cities *Stronge v. Knights of Pythias,* 189 N. Y. 346, 82 N. E. 433, 12 L. R. A., n. s., 1206. There the member, being sick, agreed with his sister-in-law that for certain care and attention by herself and husband he would make her beneficiary in his certificate. This was done and the certificate was issued and delivered to her. Afterwards he attempted to change the beneficiary, and it was held that he could not do so in violation of his sister's rights. It was urged that the constitution and general laws of the defendant constituted the contract binding on the member and the beneficiary; that the plaintiff had no vested right in the certificate, and whatever right she had was subject to revocation. The court said:

"But can there be any doubt that a member of one of these associations might say to a person that if the latter would loan him a thousand dollars he, the member, would take out a certificate designating the creditor as beneficiary as security for such loan, such designation not to be canceled or changed without the consent of the creditor, and that this contract and agreement would estop and prevent the member from changing the designation whatever might be the ordinary privileges and regulations as between him and the association when no rights of a third party had intervened? . . . The appellant performed her part of the contract and Irvine performed his so far as procuring the certificate to be issued was concerned, and the law now prohibits him from destroying the rights which appellant has acquired in the certificate for a valuable consideration." (pp. 351, 352.)

In *Binkley v. Jarvis,* 102 Ill. App. 59, 206 Ill. 541, 69 N. E. 582, a beneficiary assigned her certificate to secure a grocery bill. It was said that the only right the company had to com-

plain was that the agreement was void under its charter but that it was entirely content and made no objection on that ground, and that while such a certificate is not assignable by law all beneficiary interests therein may be transferred in equity. This was affirmed by the supreme court. (*Jarvis v. Binkley,* 206 Ill. 541, 69 N. E. 582.) In *McGrew v. McGrew,* 190 Ill. 604, 60 N. E. 861, a certificate issued by the Ancient Order of United Workmen was made payable to the member's daughter, who advanced to him an amount about equal to the face value of the certificate. The member afterwards had a new certificate issued payable to his second wife. The by-laws provided that its certificates could not be made payable to a creditor nor be held wholly or in part, nor assigned, to secure a debt of a member. It was held that while the certificate was not assignable a beneficial interest could be transferred which would be protected by a court of chancery, and that the daughter was entitled to recover. In *Hodge v. Ellis, guardian,* 76 Ga. 272, a man holding two benefit policies assigned the smaller to secure money to pay the premiums and future assessments, entering into a written contract to reserve from the proceeds of the policies $2500 for the lender. It was determined that although the father may not have had the strict legal right to make this contract binding on his minor child, equity would decree that the ward do what was right towards one who had preserved the fund for her. *Coleman v. Anderson,* 98 Tex. 570, 86 S. W. 730, is to the effect that though the laws of the benefit society, which forbade the assignment as collateral to the benefit certificate, left to the assured no interest in the contract except the right to name or change the beneficiary within certain limits, and to the beneficiary no interest except a contingent right to the insurance in the absence of any change in the beneficiary, nevertheless when the beneficiary with the consent of the insured pledged the certificate to a third party to secure assessments neither the insured nor the beneficiary could recover the certificate from such pledgee without the payment of the assessments advanced by him on the faith of such pledge, "though it was forbidden by the laws of the society issuing the certificate." (Syl. ¶ 2.) In *Brett v. Warnick,* 44 Ore. 511, 75 Pac. 1061, it was decided that lack of actual substitution as beneficiary, pursuant to the

constitution and by-laws of an association, does not affect an agreement by which a person not named therein is to receive the insurance and so deprive him of his equity to claim the same as against the beneficiaries named therein, "where the association does not insist on it, and pays the fund into court to be awarded to the contestant entitled thereto." (Syl. ¶ 2.) It seems, however, that in that case the member had the consent of the beneficiary to make the agreement. In the case of *Benard v. Grand Lodge A. O. U. W.*, 13 S. Dak. 132, 82 N. W. 404, it appeared that the insured shortly before his death surrendered a life certificate payable to his wife and received one payable to his sister. The constitution and by-laws provided that there should be no vested right in the sum provided in the policy and that it could not be assigned. The husband had obtained the certificate under an agreement with his wife that she should help pay therefor, which she did. It was held that she had an equitable interest superior to the right of her sister, the liability of the association being admitted and the controversy being between the rival claimants. In the opinion it was said that the rights must be determined by equitable principles, and that "defendant can not, by any rule or by-law, change the law applicable to such a controversy, as between the parties who claim the fund." (p. 135.)

Section 306*a* of volume 1 of the third edition of Bacon on Benefit Societies and Life Insurance thus states the rule:

"Although it is settled law that the beneficiary named by the member of a fraternal organization has no property in the benefit agreed to be paid, nor vested right therein; so as to deprive the member of the right to change the beneficiary at will, yet there may be conditions under which it would be held that the beneficiary has acquired equitable rights in the benefit, which will be recognized and protected, and the member become estopped from exercising his rights under the contract. In these cases it is not held that, under the contract, the beneficiary has acquired a vested right, but the member has parted with a right which he otherwise might have exercised."

The author quotes from *Jory v. Supreme Council, A. L. H.,* 105 Cal. 20, 38 Pac. 524, 26 L. R. A. 733, wherein it was said:

"If the original beneficiary's interest was vested no subsequent conditions could possibly arise which would defeat his right, and for this reason, we think it can hardly be termed a vested interest. The whole matter seems to be rather a question of equities, and the stronger and better equity must prevail." (p. 28.)

In section 310*b* it is said:

"When the association pays the money into court it waives the right to question the validity of the assignment. It follows that the court, having possession of the fund, will dispose of it in accordance with the principles of equity and the limitations imposed by the statutes of the forum."

"It is generally held that the regulations concerning the method of changing beneficiaries are prescribed for the protection of the society, and that if the society has by waiver or estoppel lost its right to object to a change of beneficiary no one else may raise that objection." (29 Cyc. 135.)

(See, also, 14 M. A. L. 206; Note, 33 L. R. A., n. s., 773; 29 Cyc. 128.)

Usually the rights of the holder and the beneficiary rest on the contract found in the constitution and by-laws, and ordinarily no other contract is invoked. But here the defendants, sons of the former member, are confronted with agreements made in good faith by their father which brought not only a living to his family for years but the very means to keep the certificate alive. He not only made his brother a beneficiary as he agreed but he did his part to carry out the subsequent agreement with his nephew by duly indorsing and delivering the certificate to the brother for surrender to the association. The father, if living, would not be heard to deny the plaintiff's right to the agreed portion of the proceeds. His sons, standing on the strict letter of the by-laws—not invoked by the order itself—claim the entire proceeds. They press the point that all the remaining years of his father's life from 1905, when the indorsement was made, the plaintiff slept on his rights and neglected to have the new certificate issued. According to the opening statement this is explained if not justified by the sacredness with which he regarded the sealed envelope containing his father's last will and other papers, and by his supposition that the matter had been attended to promptly. But this delay did not change the act and intention of the member to make the plaintiff the beneficiary, the consideration for which has been more than paid. Upon the principles followed in the cited cases bearing similarity to this, all the evidence should be heard, the controversy then to be adjusted upon equitable considerations.

The judgment is reversed and the cause remanded for further proceedings.

Mr. Justice BURCH and Mr. Justice MARSHALL dissent.