## SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. WEBB et al.

(District Court, N. D. Georgia, N. W. D.    June 24, 1917.)

### No. 41.

INSURANCE ⬤⟶815(2)—FRATERNAL INSURANCE—CONFLICTING CLAIMS AMONG BENEFICIARIES—ANSWER.

Where a fraternal insurance order admitted its liability and filed a bill of interpleader against the several claimants, one of whom was deceased's daughter, and the others his nephews, who had supported him for some time before his death and had paid premiums, *held*, that the answer of the nephews, which asserted their rights to the proceeds, though the certificate named the daughter as beneficiary, etc., should not be stricken; it being averred the nephews paid premiums, etc.

In Equity. Bill of interpleader by the Sovereign Camp of Woodmen of the World against Mrs. Sallie E. Webb, John Quinton, and others. On motion by Mrs. Sallie E. Webb to strike the amended answer filed by John Quinton and the unnamed defendants. Motion denied.

Maddox & Doyal, of Rome, Ga., for plaintiff.

Stephens & Sanders, of Gilmer, Tex., and Wright Willingham and L. H. Covington, both of Rome, Ga., for defendants Quinton.

Denny & Wright, of Rome, Ga., for defendant Webb.

NEWMAN, District Judge. This is a bill of interpleader, filed by the plaintiff against the defendants, to have them determine among themselves their respective rights to the fund of $1,000 paid into court by the plaintiff order, due by it on the life of A. J. Quinton, the father of Mrs. Sallie E. Webb and the uncle of the Quinton defendants. There is a motion made by Mrs. Webb to strike the an-

swer and amended answer filed by the Quintons to the bill of interpleader.

The answer and the amendment together set up: That A. J. Quinton was insured for $1,000 in the plaintiff beneficial order; the beneficiary in the policy being his daughter, formerly Sallie Quinton, since her marriage Mrs. Sallie E. Webb. That the daughter of the insured, now Mrs. Webb, on her marriage moved from the state of Texas to the state of Georgia, and left her father, A. J. Quinton, in destitute circumstances. That he was taken care of by John Quinton, Albert Quinton, and Emzy Quinton, his nephews, during the balance of his life and up to the time of his death on April 1, 1915. That prior to the death of said A. J. Quinton he made an agreement with the Quintons, his nephews, now parties to this cause, that if they would care for him and support him during the remainder of his life he would have transferred to them his policy in the plaintiff beneficiary order for $1,000. That he made application for transfer of the policy to the Quintons on June 20, 1914, and notified the local camp of Hartshorn, Okl., that he had lost his certificate and it could not be found, and that he desired a new certificate to be issued to him, and his three nephews, John Quinton, Albert Quinton, and Emzy Quinton, named as beneficiaries, instead of Sallie Quinton, who was named as beneficiary under the original certificate.

It seems from the allegations of the pleadings that this request for change in beneficiaries was made to the local camp at Hartshorn, Okl., and was forwarded to the Sovereign Clerk of the order, John T. Yates, at Omaha, Neb. The paper executed by the insured on the 20th day of June, 1914, was as follows:

"Hartshorn, Oklahoma, June 20, 1914.

"To Whom It may Concern:

"This is to certify that I have lost my certificate No. 28311 in the W. O. W., dated 9/24/06, beneficiary Sallie Quinton, and same cannot be found, and to best of my belief same was lost while traveling overland from Texas to Oklahoma, and I further certify that I want my beneficiary changed, and designate as new beneficiaries John Quinton, Albert Quinton, Emzy Quinton,

related to me as nephews.                    [Signed] A. J. X Quinton.
                                                      his
                                                      mark
"Subscribed and sworn to before me this the 20th day of June, 1914.
"My commission expires June 7, 1916.
        "[Seal.]                    [Signed] P. M. Willis, Notary Public.
"The name of A. J. Quinton was written by me at his request and in his presence, and mark made by him in my presence.
                        "[Signed]  J. W. ———, Witness to Mark.
"Attest: N. E. ———, Witness to Mark."

It seems from the contention here that the application for the change of beneficiaries did not comply with the by-laws of the order, which required an application for a change of beneficiaries should comply with the following section of the constitution and by-laws.

"Sec. 64. Should a member desire to change his beneficiary or beneficiaries, he may do so upon payment to the Sovereign Camp of a fee of twenty-five cents, which sum, together with his certificate, he shall forward to the Sovereign Clerk with his request written on the back of his certificate, giving the name or names of such new beneficiary, or beneficiaries, and upon receipt thereof the Sovereign Clerk shall issue and return a new certificate, subject to

the same conditions and rate as the one surrendered, which conditions shall be a part of the new certificate, in which he shall write the name or names of the new beneficiary or beneficiaries and shall record said change in the proper books of the Sovereign Camp.

"In event the beneficiary certificate is lost or the possession thereof is for any reason withheld from the member desiring such change of beneficiary, before the change shall be made, the member shall furnish the Sovereign Clerk satisfactory proof under oath of the loss of the certificate, or proof under oath of the facts and circumstances of the withholding of such certificate from his possession, as the case may be, and *waiving for himself and beneficiary or beneficiaries all rights thereunder*, whereupon on payment of twenty-five cents the Sovereign Clerk, if such proof is satisfactory to him, shall issue to said member a new certificate in lieu of the old one with the desired change of beneficiary, and shall at once mail to the last known post office address of the former beneficiary or beneficiaries notice of such change."

It seems that this application for change of beneficiaries did not contain the words which are italicized above, and for that reason the Sovereign Clerk sent him a proper form, which was received by him two days before his death. He had received no notice, prior to that time, of any action on his application for change of beneficiaries. The receipt of the proper form from Yates, Sovereign Clerk of the order, by A. J. Quinton, was two days before his death, and it seems from the papers, and indeed it is alleged, that it was not in time for him to execute and return the same to Yates.

The Quintons allege in their answer that for two years prior to the death of said A. J. Quinton they had been paying his premiums on the policy and supporting him and waiting on him, he being practically an invalid, and at this time they were under the impression and believed that they had been substituted as beneficiaries in lieu of Mrs. Webb. The question for determination now is on the motion by Mrs. Webb, as stated, to strike the answer of the Quintons, on the ground that on their own showing it would not be a case entitling them to any relief or to any part of the fund in court.

Counsel for Mrs. Webb cite the case of Smith v. Locomotive Engineers' Mutual Life & Accident Insurance Association, 138 Ga. 717, 76 S. E. 44, and Page v. Bell, 146 Ga. 680, 92 S. E. 54, and other authorities, in favor of their position that a failure to comply with the by-laws and rules of an association with reference to beneficiaries gives the Quintons no right to the fund in court here, and that the same should be awarded to Mrs. Webb. The case of Supreme Conclave, Royal Adelphia, v. Cappella et al. (C. C.) 41 Fed. 1, decided by Judge Brown, afterwards Mr. Justice Brown of the United States Supreme Court, is relied upon somewhat by counsel for both parties in this case. Counsel for the Quintons rely mainly upon the case of Brown v. Modern Woodmen of America et al., 97 Kan. 665, 156 Pac. 767, L. R. A. 1916E, 588.

The case now is in equity and between the claimants to this fund. The beneficiary order has no further interest in the matter, as it has paid the money into court, thus absolving itself from any further liability; so I do not think the omission from the request for change of beneficiary by J. A. Quinton of the language which has been referred to above is so material as it would be if there was a suit against

the order to recover the amount of the policy. If the three Quintons paid the premiums and kept this policy alive for the assured during the last two years of his life, I do not see how it could be possible, in a court of equity, to decline to repay them the amount so advanced to him. As to the amount claimed by them for caring for him, supporting him, and looking after him during the last two years of his life, the rights of the parties are not so clear.

Of course the Quintons are claiming the entire fund, upon the ground that they kept the policy alive and that it was substantial compliance with the rules of the order to make the request he made for a change of the beneficiary, although certain language required by the by-laws was not in it. At all events, for the present I am perfectly satisfied that the motion by Mrs. Webb to strike the answer of the Quintons should be overruled, because they are at least entitled to receive back what they advanced for premiums on the policy, and possibly also what they actually expended in caring for him during the last two years of his life, if they can establish by proof what that character of support was worth.

Therefore the motion to strike is hereby overruled.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes