15 P.(2d) 229

**McDANIEL v. McDANIEL.**
**No. 3667.**

Supreme Court of New Mexico.
Oct. 5, 1932.

G. L. Reese, of Roswell, and Whelan & Reese, of Lovington, for appellant.

Tom W. Neal, of Lovington, for appellee.

SADLER, J.

On May 22, 1920, the appellee, plaintiff below, and the appellant, defendant in the trial court, being husband and wife, entered into a separation agreement in writing whereby they agreed to live separate and apart. Actually, as found by the trial court in a decree of divorce subsequently awarded the plaintiff against defendant for abandonment, the latter had deserted her husband about August 18, 1920, four days prior to the execution of the separation agreement. There were two minor children, a son and a daughter, aged respectively eleven and ten at the date of the agreement. The agreement contemplated that they should remain in defendant's custody and provided that in consideration of a

monthly payment of $20 by plaintiff to defendant for 105 months "to help support and care for" said minor children, the defendant would convey to plaintiff her entire interest in the community property describing it. The contract and a quitclaim deed were to be and were placed in escrow pending performance of the contract.

On August 23, 1921, following the agreement, as above noted, the plaintiff secured a divorce from the defendant in Lea County, N. M. The divorce decree contained a recital that it did not purport to affect the property rights of the parties, nor any claim for alimony, nor support for the minor children, all of which were, so far as that decree was concerned and recited, "left open without action thereon and subject to future litigation."

Almost immediately after execution of the separation agreement the defendant departed for California, taking with her the two minor children of the marriage. She established a home for herself and the children in that state, and there they have since remained, except for a trip or trips back to New Mexico, in connection with this litigation. Approximately a year before the institution of the suit out of which this appeal arose, the plaintiff completed the payments called for by the separation agreement and took up the quitclaim deed provided for therein. After said agreement was executed, though pursuant to an understanding previously had between plaintiff and defendant and another party, 120 acres of the land described in the agreement were exchanged for 160 acres owned by such other party.

Such was the situation of the parties in March, 1930, when plaintiff instituted this suit against the defendant in the district court of Lea county to quiet his title to the real estate involved herein, consisting of two town lots in the village of Lovington and 320 acres of land, including that substituted by the exchange aforesaid, all in Lea county, N. M., being the same property described in the separation agreement and in the quitclaim deed, except for the substitution above mentioned.

Unless said separation agreement is to be set aside upon some of the grounds of attack made on it, it must follow that plaintiff was entitled to a decree quieting his title to the property in suit against the adverse claim asserted in it by the defendant. The defendant insists the separation agreement was wholly without consideration since that recited—contribution of a monthly sum as support for his minor children—was something he was already legally obligated to do; that a promise to do what the law requires one to do furnishes no consideration. It was also urged by defendant below, and the contention is here renewed, that the plaintiff failed to sustain the burden imposed on him under the doctrine of Beals v. Ares, 25 N. M. 459, 185 P. 780, of showing: (1) Payment of an adequate consideration; (2) full disclosure as to wife's rights, and value and extent of the community property; and (3) that the wife had competent and independent advice in the negotiations leading up to the agreement.

The defendant charged fraud and undue influence in the procuring of her signature to

the agreement. She filed a cross-complaint asking that her title to an undivided half interest in said real estate be quieted. She also sought to recover and have satisfied out of the undivided half interest which she conceded as plaintiff's community share of the property in question the sum of $6,600 claimed to be the excess advanced by her for support of the children over and above plaintiff's contributions under the agreement.

The findings of the trial court where all of the foregoing points were in issue were favorable to the plaintiff, appellee here. Substantially, the court found that the transaction was free from fraud, concealment, or duress of any character; that defendant knew and was fully advised as to the extent and value of the community property; that the agreement was fair and equitable and as desired by her at that time; that she was represented and advised throughout by an attorney, who prepared the separation agreement and presented it to plaintiff for signature and that he signed same; that at that time the entire community property had a value of only $1,500; that plaintiff had no separate estate, but that defendant then owned separately 320 acres in Lea county having a value of $1,500 and in addition was possessed of an interest in her father's estate valued at $3,500. The court further found that plaintiff had paid the entire sum provided for in the separation agreement, to wit, $20 per month for 105 months, a total of $2,100 and, though not called for by the contract, had paid defendant over said period the additional sum of $397, and his daughter an additional

$100; that defendant had accepted the full consideration to be paid her under said agreement, and had since May 22, 1920, acquiesced in said settlement; and, finally, that the agreement was based upon an adequate consideration.

The court concluded that defendant was not entitled to recover from plaintiff any moneys advanced by her since the divorce for support of the children and that plaintiff's title should be quieted to the real estate against claims of the defendant. Decree was thereupon entered accordingly.

We have carefully examined the entire record, and though defendant questions the sufficiency of the evidence to sustain each material finding, we are not persuaded that any of them lacks substantial support. Perhaps the most serious assaults are made upon two particular findings of the court: First, that defendant had independent legal advice in respect to the separation agreement executed; and, second, that such agreement was supported by an adequate consideration.

As to the finding first mentioned, it is an admitted fact that she employed an attorney who prepared and procured the execution of the agreement by plaintiff. She contends that such attorney acted simply in a ministerial capacity as draftsman of the instrument, and that she consulted him in no way as to her property rights. The attorney in question was dead at the time of the trial. If living, a nice question might have been presented as to whether his testimony on the issue could have been compelled against a claim of privilege by

defendant. The plaintiff, who was unrepresented by counsel at time of the agreement, testified he was not present at any conferences between his wife and her counsel and, of course, was unable to state of his own knowledge the exact nature of the employment. Having admittedly employed an attorney to prepare an instrument disposing of her property rights in the community, it would have been only natural for her to consult him with reference to those rights. It was legitimate for the trial judge, under all the circumstances shown in evidence, to draw the inference that she did have the benefit of her attorney's advice and counsel.

We must view the question of consideration for the separation agreement in the light of the statutes authorizing such instruments. The pertinent sections are as follows:

"68-201. Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other. (L. '07, Ch. 37, § 4; Code '15, § 2750.)"

"68-510. A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children during their separation. (L. '07, Ch. 37, § 5; Code '15, § 2782.)"

"68-511. The mutual consent of the parties is a sufficient consideration for such an agreement as is mentioned in the last section. (L. '07, Ch. 37, § 6; Code '15, § 2783.)"

These statutes recognize the lawful right to make such an agreement as that here sought to be impeached. Voluntary settlements of the property interests of husband and wife, after separation or pending a divorce suit, are thus not only lawful but are deemed commendable. Miller v. Miller, 33 N. M. 132, 262 P. 1007.

Whether there was or was not an adequate consideration for this agreement presents a question more or less related and interwoven with the question of the wife's right to recover from her former husband for maintenance claimed to have been furnished by her to the children in excess of the amounts received by her under the agreement. The divorce decree rendered a little more than a year after the agreement leaves undisturbed the property settlement effected in such agreement. It does adjudicate, however, that defendant was the party at fault and that her abandonment of the husband warranted the divorce granted. This has an important bearing upon the wife's right to recover in her own name for necessaries furnished the children retained by her in such abandonment; also upon a determination of the question whether there was an adequate consideration for the settlement agreement.

The weight of authority supports the view that where a divorce is granted the wife, and the custody of minor children is awarded her,

but without provision in the decree for their support, the wife may maintain an action against the husband in her own name to recover for necessaries furnished them. But there are limitations to the application of this rule, as pointed out by the author of the annotation in 15 A. L. R. 569, 572, where he said: "Since the rule that a father is liable for the support of his children though he has, by a decree of divorce, been deprived of their society and services, is based on the fact that his fault produced the condition, the rule has been held to be inapplicable where the divorce is granted for the fault of the wife." See, also, Fulton v. Fulton, 52 Ohio St. 229, 39 N. E. 729, 29 L. R. A. 678, 49 Am. St. Rep. 720; Christoff v. Christoff, 3 Ohio Cir. Dec. 562; La Rue v. Kempf, 186 Mo. App. 57, 171 S. W. 588.

We recognized this exception to the prevailing rule in Fullen v. Fullen, 21 N. M. 212, 237, 153 P. 294, 302, where we said:

"The general principle upon which allowances are made against the husband for the support of minor children awarded to the wife in divorce cases is that it is the primary common-law duty of the husband to support his children; that this duty continues with him when, from his own fault, the marriage relation is dissolved, and the society and services of the children are taken from him and committed to the wife for his fault. 2 Bishop, Mar., Div. & Sep. § 1223; Spencer v. Spencer, 97 Minn. 56, 105 N. W. 483, 2 L. R. A. (N. S.) 851, 114 Am. St. Rep. 695, 7 Ann. Cas. 901, and note; Graham v. Graham, 38 Colo. 453, 88

P. 852, 8 L. R. A. (N. S.) 1270, 12 Ann. Cas. 137, and note.

"On the contrary, where the husband obtains a divorce for the wife's fault, as in this case, it has been held that she has no claims upon the husband for their support. Fulton v. Fulton, 52 Ohio St. 229, 39 N. E. 729, 29 L. R. A. 678, 49 Am. St. Rep. 720.

"This holding would seem to be entirely correct in so far as it prevents a recovery against the husband for necessaries furnished by her, she being the cause of the marital difficulties. That was the case before the court. But even in that case, and in the circumstances there present, it was recognized that the necessities of the infants might require the father's contribution to their relief."

As indicated by the last sentence of the foregoing quotation, notwithstanding this exception and the restriction thereby imposed on the wife's right to recover in her own name for support furnished the children, their necessities may be such as to warrant the enforcement of contribution by the husband in their behalf. This record does not present such a case. In fact, it appears from the evidence that the daughter of the couple was married and supported by her husband and that the son was earning a salary of $135 per month and self-supporting at the time of the trial. The effort is clearly one by the wife to recover in her own name for past support furnished the children retained in her custody during a separation attributable to her own fault as adjudged by the trial

court in the divorce proceedings. Worthington v. Worthington, 218 Ala. 80, 117 So. 645, is a case which points out these superior rights of the children, even in the face of an agreement between parents, where some one as next friend presents their necessities to the court.

The plaintiff's willingness and desire to support and have the companionship of his children, if defendant would consent to leave them with him, appears in the evidence. He testified:

"Q. What was your treatment toward her? A. I let her do just as she pleased, and that is what she done. When she wanted to go away to California, she went to California, and when she got ready to come back, she come back; and when she wanted to go to Oklahoma, she would go to Oklahoma. She left me three or four times.

"Q. You never had any influence over her conduct whatever? A. None whatever.

"Q. When she took the children and finally went to California, what did you tell her about those children? A. I told her if she couldn't take care of those children, to send them to me, I wanted them. She took them away from a good home and a good school.

"Q. The children are now grown? A. Practically grown."

Thus we find that while an ultimate legal liability to support the children according to their necessities rested at all times upon the husband and father, it was a liability existing in their favor. It did not exist by implication in favor of the wife for support furnished them by her while in her custody during a separation attributable to her own fault. Being at fault, at the time of the agreement, as the court subsequently found her to be, she might very well have entertained serious doubt whether, in a contest over the matter, she would have been permitted to retain custody of the one or the other of the children, and a more serious doubt whether she could secure the custody of both of them.

This she accomplished by the terms of the separation agreement. In its final analysis under the agreement, the plaintiff paid her $2,100 for her half interest in community property, the entire interest in which had a reasonable value at the time of only $1,500. There was nothing inequitable or unjust in this arrangement. If, as a part of the same contract the husband could bind her, as the agreement does, to appropriate the entire sum received to the support of the children whose custody, except for the agreement, she might not have had—particularly in view of a sizable separate estate owned by the wife—it discloses no element of overreaching or unfairness. On the contrary, it shows a worthy attitude of a father for the welfare of his children.

In view of the foregoing considerations, we must hold that the agreement was supported by a consideration which was in all respects adequate and that the defendant had no claim on the plaintiff for support furnished by her to the children.

Sections 159 and 160, Civ. Code of California, are practically identical in language with

our sections 68-510 and 68-511, Comp. 1929. Section 158, Civ. Code of California, is a replica of our section 68-201, Comp. 1929. These provisions of the California Code have been before the courts of that state for construction many times. Invariably, where fair and free from fraud or undue influence, agreements executed under the authority of these statutes have been sustained. For illustrative cases, see McCahan v. McCahan, 47 Cal. App. 176, 190 P. 460, Brown v. Brown, 83 Cal. App. 74, 256 P. 595, Chadwick v. Chadwick, 95 Cal. App. 690, 273 P. 86.

In Brown v. Brown, supra, it was held, in accordance with the contention of plaintiff (appellee) urged before us, that the mutual consent of husband and wife mentioned in section 68-511, supra (section 160, Civ. Code Cal.), furnished adequate consideration for a contract under section 68-510 (section 159, Civ. Code Cal.), governing property interests of husband and wife. Even though such be true, as meeting the test of legal adequacy sufficient to support a contract, it would still be necessary under our holding in Beals v. Ares, supra, for the husband to show that he had paid the wife an adequate consideration for the release by her of her rights in the community; in other words, that the settlement was fair. When he shows, as he does here, that he paid her $600 in excess of the value of the entire community for her one-half interest therein, we think he has abundantly met this test.

██ It is finally urged by defendant's counsel that the trial court erred in quieting title in plaintiff, since the quitclaim deed upon which he relies was signed by the wife alone. It is argued that such an instrument is wholly void under the provisions of chapter 84, Laws of 1915, which declare that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect. It might be a sufficient answer to this point to mention the fact that this deed was held in escrow undelivered until after the effective date of chapter 84, Laws of 1927 (section 68-403, Comp. 1929), expressly authorizing conveyances of community interests directly between husband and wife. Until delivered it was not effective. Whether its validity is to be tested as of date of its signing and escrow or as of the time it became effective by delivery presents a nice question which under our view of the statute invoked we need not determine.

The amendment of 1927 added nothing to the powers already possessed by husband and wife as to dealings between themselves. Chapter 84, Laws of 1915, did not as respects dealings between husband and wife repeal or modify the provisions of sections 68-201, 68-510, 68-511, Comp. 1929 (sections 4, 5, and 6, c. 37, Laws 1907), which specifically authorize separation agreements and empower husband and wife to enter into any engagement with the other, respecting property, which either might, if unmarried. Construing identical statutes in Sanguinetti v. Sanguinetti, 51 Cal. App. 347, 196 P. 799, 801, the California Court of Appeals said: "The plain terms of the statute authorize the husband

or the wife to convey to the other all title and interest in either separate or community property." See, also, Brown v. Brown, supra, and Chadwick v. Chadwick, supra.

Furthermore, the limitation imposed by this statute on the power of the husband to convey community property is obviously for the wife's protection. Davidson v. Click, 31 N. M. 543, 249 P. 100, 47 A. L. R. 1016. And it can hardly be said that a conveyance from husband to wife, or vice versa, represents an attempt by either of them *alone* to transfer or convey community interests within the true meaning of the prohibition contained in this statute.

██ But laying aside altogether the effect of this deed, the plaintiff having performed all the conditions called for by the contract by paying the full purchase price, was the owner of the entire equitable estate in the property purchased. If the deed delivered were in any respect insufficient, the husband's willingness as the taker under the instrument to join his former wife in the execution of a proper deed would, of course, be presumed. Equitable ownership of the property entitled him to maintain the suit and quiet his title. 51 C. J. 169; 5 R. C. L. 649; Abeyta v. Tafoya, 26 N. M. 346, 192 P. 481; Albarado v. Chavez, 36 N. M. 186, 10 P.(2d) 1102.

The judgment of the lower court should be affirmed and the cause remanded. It is so ordered.

BICKLEY, C. J., and WATSON and HUDSPETH, JJ., concur.