[No. 15991.    Department Two.    December 3, 1920.]

MARGARET P. FOSTER, *formerly Margaret Tone,*
*Respondent,* v. D. C. FLOYD, *Appellant.*[1]

BILLS AND NOTES (130)—MORTGAGES (14, 23)—PAYMENT—ABSO-
LUTE DEED AS MORTGAGE—EVIDENCE—SUFFICIENCY. The burden of
proving that the cancellation of a note was without authority, and
of establishing by clear and convincing evidence that an absolute
deed was intended as a mortgage to secure the note, and not as
payment, is sustained where it appears that the payee's testimony
to that effect was corroborated, that the property conveyed was
worthless, that the maker tore his name from the note under pro-
test by the payee, and did not deny that he thereafter stated that
his payment of the note would depend upon his mother's will and
must await settlement of her estate.

MORTGAGES (85)—ACTION ON INDEBTEDNESS SECURITY—CONDITION
PRECEDENT—WAIVER OF SECURITY. An action upon a note secured
by an absolute deed as a mortgage waives the security, and an offer
to reconvey is not a condition precedent to recovery, where plaintiff
took a judgment specifically cancelling the deed.

Appeal from a judgment of the superior court for
King county, Smith, J., entered March 4, 1920, upon
findings in favor of the plaintiff, in an action on a
promissory note, tried to the court. Affirmed.

*Tom S. Patterson* and *James M. Gephart,* for ap-
pellant.

*Reynolds, Ballinger & Hutson,* for respondent.

MITCHELL, J.—This action was commenced on Sep-
tember 5, 1919, to recover the sum of $1,792.02 as the
balance due on a promissory note of $1,998.52, dated
September 10, 1912, payable one year after date. The
defendant admitted the execution and delivery of the
note and affirmatively alleged it had been paid by his
giving to the plaintiff a deed to certain real property
situated at Newport, Oregon, and that the note was

[1]Reported in 194 Pac. 407.

thereupon cancelled. The reply admitted the delivery of the deed and alleged that it was not given as payment of the note, but that it was understood by both parties to be, and was given, as a mortgage to secure the payment of the note. The findings, conclusions and judgment were in favor of the plaintiff. The defendant has appealed.

For years the relations between the parties was most cordial and confidential. Before her marriage, in June, 1913, respondent engaged in teaching school, and for one year had made her home with the appellant and his wife, who was a sister of the respondent. It appears her business dealings were mostly with or by the help of the appellant. Through his efforts she had borrowed money from his mother. After selling her homestead in 1907, she had $4,200 left after paying her debt to his mother. Of this, she loaned $4,000 to him and his brother-in-law, Stacy Shown, upon their unsecured promissory notes. He and Stacy Shown were partners as pawnbrokers in Seattle. The indebtedness was reduced and a renewal note given by them every year until the note in question here was made, when she agreed to take the note of appellant only. Prior to this note, she had made several other loans of $70 to $700 each to him upon his unsecured promissory note, all of which he had promptly paid. Notwithstanding she had been warned against him by his own people, and that he had divorced his wife in 1912, she still had confidence that he would pay as he promised. She testified:

"But at that time (the making of the deed in question, Oct. 11, 1913) anything Carl Floyd would have said to me pertaining to business, what he would do or what he would not do, I would have believed him."

She still depended on him and trusted his honesty and promise to pay the note, even after he had torn

the name off of it, according to her testimony. As sued on, the maker's name does not appear on the note. She testified that he telephoned her to bring the note down to Mr. Shown's office, that he was not even able to pay the interest, but that he would give her the Newport property as security. She took the note as requested and he stated that he was not doing well financially, could not pay the interest and had nothing except the Newport property, which he was going to give her as security. He then handed her a paper (a quitclaim deed to the Newport property) and upon examining it she said: "Carl, this is a deed, it is not a mortgage," and he replied: "Yes, I know it is a deed, but a deed is simpler," and that he further said: "Sell out whenever you can and as soon as you can, I will pay you the cash, and then you can turn the property back to me." She said that he trusted her, and told her he didn't think the property was worth the writing or recording of the deed, but it was all he had, and if anything happened to him if she only got $50 it would be better than nothing. She further testified:

"He asked me if I brought down the note, and I said 'Yes,' and he took it and looked at it and took it in his hands and started to tear it up. I reached over to take the note out of his hand and said, 'I would like to keep the note as a kind of record of what is actually owed me when we settle up,' and as I finished saying that, he tore all his signature off except the first initial and he said: 'Well, I don't object to you having the note anyway; it is not of any use with my name torn off.'"

It appears that, in all their prior transactions, whenever a note was not paid by him at maturity he shortly gave a new one and took up the old one. She retained none of these old notes. She asked for a renewal note

on this occasion, after he had handed her the deed. She testified:

"He said he could not give me a new note and the deed to the property. This was the first intimation I had that he did not intend to give me a new note. I think if he had said that before I gave him the old one I would not have given him the old one; because legally it was better with his name on than with it off. . . . But still I considered that his promise just the same as if his name had been to it."

At the time of the delivery of the deed, it is evident that both parties were of the opinion the property was practically valueless. They both knew that years before it had been purchased by appellant's father and one Cooper; that Cooper, on account of failure to pay taxes, let his interest (one-fourth) be sold at tax sale; that appellant became the purchaser at the tax sale for $7.33, and thereafter appellant's father, without any valuable consideration, conveyed his three-fourths interest in the property to appellant and Stacy Shown, a son-in-law; that Stacy Shown afterwards, by a conveyance, gave his interest in it to appellant, because, as he said, it was not worth paying taxes on; and that, during appellant's divorce proceedings in 1912, he had made affidavit that the property was practically worthless. At the date of the deed to respondent, there were delinquent taxes on the property.

Respondent testified that, in 1916, upon the death of appellant's mother, he telephoned her within ten minutes of the death, and that she then asked him about paying her, and he answered "It would depend upon his mother's will." This was not denied by the appellant. Later he told her he could not pay until after the property in his mother's estate was divided. Afterwards she learned the property of the estate was being divided and wrote to him for payment. He answered

stating he had paid the debt by the deed to the Newport property. This, she said, was the first time he had ever intimated to her in any way that he considered the deed a payment of the note. Shortly thereafter she commenced this action.

True it is, appellant testified that, in his opinion, the property was worth from $2,500 to $3,000 on October 11, 1913; and it is also true that his account of the transaction on that date as to the purpose of his mutilating the note and giving the deed differs from her account. Nevertheless, we think the weight of the evidence is convincingly with the respondent. The trial judge at the conclusion of the evidence remarked: "Granting that § 3513, Rem. Code, places the burden of proof upon Mrs. Foster to establish that the note was cancelled without authority, I do not think anybody can hear Mrs. Foster's testimony without coming to the conclusion that that burden has been satisfied." A careful consideration of the evidence in the case convinces us to the same extent. That the deed was intended by both parties to be a mortgage only, is also well established. Admit the rule that a deed, absolute in form, will not be held to be a mortgage except upon clear and convincing proof, we find its answer here. And respondent is not without corroboration. Her husband testified that a few weeks after the deed had been recorded (appellant having paid the recording fee), at his home, in the presence of himself and his wife, the appellant exhibited two plats of the property and copies of a small paper issued at Newport containing articles regarding some "attempted appropriation by Congress," and remarked: "If this appropriation goes through, we will get something out of this yet." There was no denial of this by appellant.

Appellant's contention, that an offer by the respond-

ent to reconvey was a condition precedent to the maintenance of this action, is without merit. By this suit on the note, she waived all rights under the deed intended as a mortgage, and has taken a judgment that specifically cancels the deed. Minor objections to the order of proof and admissibility of certain evidence are noticed. An examination of the record shows these objections are not well taken, in our opinion.

Judgment affirmed.

HOLCOMB, C. J., MOUNT, MAIN, and TOLMAN, JJ., concur.