(No. 2765. April 21, 1924. Rehearing Denied June 6, 1924.)

## CITIZENS' NAT. BANK OF ALBUQUERQUE v. RULEY.

### SYLLABUS BY THE COURT.

1. Government land acquired under the Stockraising Homstead Law of Congress (U. S. Comp. St. §§ 4587a—4587k) by an entryman. who is unmarried at the time of making the entry is the separate property of the entryman, notwithstanding he is a married man at the time of making final proof.

2. Such land so acquired is exempt from attachment or execution for a debt contracted by the entryman prior to issuance of patent from the government.

Appeal from District Court, De Baca County; Bratton, Judge.

Action by the Citizens' National Bank of Albuquerque against B. J. Ruley. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions.

H. R. Parsons, of Fort Sumner, for appellant.

John F. Simms, of Albuquerque, and C. F. Fishback, of Fort Sumner, for appellee.

### OPINION OF THE COURT.

PARKER, C. J. The appellee brought an action for money loaned against the appellant, Ruley, and obtained a writ of attachment which was duly levied on the land in question on September 21, 1920. On September 28, 1920, Ruley executed a mortgage on the land to the intervener, Granger. An amended com-

plaint was filed by appellee pleading its cause of action somewhat more in detail and adding two counts, but neither of the latter was sustained by the court. The land in question was government land, and Ruley applied for entry of the same at the United States Land Office on January 4, 1917, under the provisions of the Act of December 29, 1916, chapter 9, 39 Stat. L. 862, Fed. Stat. Ann. 1918 Supp. 708 (U. S. Comp. St. §§ 4587a-4587k), commonly called the "Stockraising Homestead Law." At the time of the entry, Ruley was unmarried, but at the time of issuance of final receipt to him he was married. Two questions are presented.

[1] 1. The mortgage to intervener was executed by Ruley alone, his wife not joining therein. Its validity was challenged on the ground that the property was community property, and therefore the mortgage was void by reason of the provisions of chapter 84, Laws of 1915. The court held the property was community property upon the authority of Baker v. Saxon, 24 N. M. 531, 174 Pac. 991, and held the mortgage void under the terms of the above statute and upon the authority of Miera v. Miera, 25 N. M. 299, 181 Pac. 583. Vigorous assault is made by counsel upon the Baker-Saxon Case to the effect that it is contrary to the current of authority and should be overruled. In that case the entryman was married at the time he made his entry, but was divorced before he made final proof. In this case the entryman was unmarried at the time of entry, but was married at the time of final proof. The Baker-Saxon case makes the status at the time of final proof the test in regard to whether the property is separate or community property. In that case our court relied upon McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237. That case clearly holds that so long as the right to the title is incomplete, the federal laws control to the exclusion of any community property laws of the state, and that, should the entryman die before patent, the doctrine of relation cannot be invoked by the heirs as against the conjugal survivor who completes the entry. In other words, the case holds that the federal laws determine who shall take the title from the government. This case is followed by Wadkins v. Producer Oil Co., 227 U. S. 368, 33 Sup. Ct. 380, 57 L.

Ed. 551. In that case the father of plaintiff settled on the land in 1893, married plaintiff's mother in 1894, who died in 1896, made homestead entry in 1895, and made final proof in 1898. The court, in sustaining the Supreme Court of Louisiana, held that the right of the entryman related back to the date of settlement under the provisions of section 3, Act of May 14, 1880, chapter 89, 21 Stat. L. 140, 6 Fed. Stat. Ann. 301 (U. S. Comp. St. § 4538), and that consequently the plaintiff, daughter of the entryman and his deceased wife, acquired no rights in the land as the heir of her mother. The effect of this decision is to say that the title of the entryman, as between him and any person, wife, child, or others claiming interests under state laws, dates from the time of settlement on the land as a homestead. The next case is Buchser v. Buchser, 231 U. S. 157, 34 Sup. Ct. 46, 58 L. Ed. 166. In that case a married man made entry and acquired title under the homestead laws; thereafter his wife died, and their children set up claim to one-half of the property as heirs of their deceased mother. The claim was valid under the laws of Washington, and was sustained by the Supreme Court. That court said:

"There is no doubt, of course, that until the title is completed the laws of the United States control. * * * But when the title has passed then the land 'like all other property in the state is subject to state legislation.' * * * No one would doubt that this title was subject to the same incidents as any other so far as events subsequent to its acquisition were concerned. * * * It could be lost by adverse occupation for the time prescribed by state law, and in a state that adopted the common law as to dower it would be subject to dower if the settler subsequently married. The only semblance of difficulty is due to the coincidence in time of the acquisition of a separate right by the settler and the beginning of a community right in the wife. But this is by no means an extreme illustration of the division of an indivisible instant that is practiced by the law whenever it is necessary. * * * In the present case the acquisition under the United States law is complete and that law has released its control before the state law lays hold, and, upon grounds in no way connected or interfering with the policy of Congress, brings the community regime into play."

It was not specifically decided in the McCune-Essig Case, supra, what the result would be in case of the dissolution of the marriage community by death or di-

vorce during the period between entry and patent, and the completion of entry by the husband. The decision is based upon the express terms of the federal statute giving the right to the surviving widow. But the case is treated as authority, in principle, for the holding that the husband would, under such circumstances, take title as his separate property, the same as we held in the Baker-Saxon Case. See Cunningham v. Krutz, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967, and note. We see no reason to depart from our former decision. It is apparent that the case at bar differs from the Baker-Saxon Case in that in that case the marriage relation was dissolved before the title was perfected, so that there was no community into which the estate could fall when it was acquired. In the case at bar, however, there was a marriage community at the time of final proof; but, under the very terms of the federal statute, the title was the separate property of the husband because by relation the same was of the date of the entry and he was at that time a single person. See Teynor v. Heible, 74 Wash. 222, 133 Pac. 1, 46 L. R. A. (N. S.) 1033, and note. See, also, in this connection, 31 C. J. Husband and Wife, § 1138, where the authorities are all collected.

We appreciate the hardship which may sometimes result from this condition of the law. A wife may live out practically the homestead period with a husband from whom she may become compelled to separate and secure a divorce, and yet she will thereby lose all benefit of her labor during the period; or, if she die during the period, her children will likewise lose all interest in the land. But property rights cannot be established upon mere sentiment and without some provision of law to support them. There is no provision of law whereby her equitable proportion of the property, so called, can be ascertained under the circumstances mentioned.

As we understand the cases, the right to title to government land in a homestead entryman dates from the time of settlement on the land by the express terms of the federal statute, and from that time on no state statute can be allowed to intervene to create rights in others. In case the married entryman dies and the entry is completed by the widow, her rights spring into being,

and she takes title as of the date of her husband's death, free from any claims under a state statute by the children of the marriage; she being, at the time of the initiation of her right, an unmarried person.    Where the marriage is dissolved either by death or divorce during the homestead period, the entryman takes the entire title as separate property.    But when the government has finally parted with the title, the property falls into the general mass of the property of the state and becomes subject to its laws.    This being true, it is evident that the court erred in holding that the property mortgaged was community property, and that the mortgage was void.    At the time of the entry the entryman was a single man, and, his title relating back to the date of the entry, it was his separate property and never became subject to the community property law.

[2]    2.    The action was for money loaned to Ruley before the issuance of the final receipt to him upon his homestead entry.    The action was by attachment, and the judgment sustained the attachment and ordered the premises sold to satisfy the same.    Ruley was served by publication and did not appear.    The judgment was finally rendered March 7, 1922.    On February 6, 1922, Ruley appeared and set up by a motion that the property was exempt under the provisions of section 2296, R. S. U. S., 6 Fed. Stat. Ann. 307 (U. S. Comp. St. § 4551), which provides:

"No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

The court held this section applicable to this homestead entry upon the authority of Re Auge (D. C.) 238 Fed. 621, and State Bank v. Bottineau County Bank, 56 Mont. 363, 185 Pac. 162, 8 A. L. R. 631.    These cases involved this exemption as to lands entered under the Enlarged Homestead Act, but by analogy it is equally applicable to the Stockraising Act, as the court held.

However, this exemption was denied by the court upon the theory, we assume, that the same was not properly claimed.    In this there was error.    Prior to the final entry of default, Ruley appeared and definitely raised the proposition, although, owing to the con-

dition of the record, his pleading was somewhat informal.

It follows from all of the foregoing that the judgment should be reversed, and the cause remanded, with directions to set aside the judgment and to proceed in accordance herewith, and it is so ordered.

MECHEM, District Judge, concurs.

BRATTON, J., having tried the case below, did not participate.

BOTTS, J., having been of counsel in the lower court, did not participate.