STATE, Appellant, v. NELSON, Respondent.

(237 N. W. 766.)

(File No. 7065. Opinion filed August 3, 1931.)

*M. Q. Sharpe,* Attorney General, and *B. H. Schaphorst,* of Brookings, for Appellant.

*Wallace E. Purdy,* of Brookings, for Respondent.

POLLEY, P. J. In this case an information was filed against the defendant charging him with the violation of the provisions of chapter 121, Laws of 1923, known as the Bad Check Law. Defendant demurred to the information on the ground that it did not state facts sufficient to constitute a public offense. The demurrer was sustained, and the state appeals.

The check was executed and delivered to the payee on the 22d day of October, but was dated November 22d. Therefore, it constituted what is known as a postdated check; and the first ground urged by the defendant in support of the demurrer is that the statute under which the information is drawn does not apply to a postdated check. Section 1 of the said statute reads as follows: "It shall be unlawful for any person, either for himself or as the agent or representative of another or as an officer of a corporation, to make, draw, utter, issue, or deliver any check, draft or order on any bank or depository for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering,

issuing or delivering of such check, draft or order as aforesaid that he has not sufficient funds on deposit in or credit with such bank or depository with which to pay such check, draft or order upon presentation." It will be seen from a reading of this section that no mention of postdated checks is made, and it may be true that a postdated check is not a check at all as the same is defined by our statute. Section 1887, Rev. Code 1919, defines a check as "a bill of exchange drawn on a bank payable on demand." If the word "check" is to be confined within this definition, then it is no violation of the law to issue a postdated check because such a check is not payable on demand, but only on or after the date named in the check; but it is urged by the Attorney General that, if the instrument in question is not a check, it is an order or something else that has the same effect, and that the distinction should be disregarded and the defendant prosecuted as though he had given a check in the strict sense of the word. We will not pause to consider this contention, because we prefer to rest our decision upon another ground urged by the defendant.

It is the contention of the defendant that the effect of the law in question is "imprisonment for debt" arising out of or founded upon contract and is therefore in violation of section 15 of article 6 of our Constitution.

Section 2 of chapter 121, Laws 1923, provides the penalty for a violation of the provisions of Section 1 and reads as follows: "That any person violating any of the provisions of Section 1 of this act shall be deemed guilty of a misdemeanor if such check, draft, or order is drawn for less than twenty dollars and upon conviction shall be punished by a fine of not less than twenty-five dollars and not more than one hundred dollars or by imprisonment in the county jail for a period of not less than ten days and not more than six months, or by both such fine and imprisonment; if such check, draft or order shall be drawn for an amount of twenty dollars or more, such persons shall be deemed guilty of a felony and upon conviction shall be punished by a fine of not less than one hundred dollars and not more than five thousand dollars, or by imprisonment in the state penitentiary for a period of not less than one year and not more than five years or by both such fine and imprisonment."

These two sections, 1 and 2, if standing alone, constitute a

complete law. Section 1 describes the offense and section 2 prescribes the penalty for a violation of the provisions of section 1, and make it a misdemeanor or a felony, according to the amount of the check, for a person to issue any check, draft, or order on a bank knowing at the time that he did not have sufficient funds on deposit in, or credit with, the said bank with which to pay such check, draft, or order on presentation. But section 3 of the law reads as follows: "That in any case where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or the judge that he has had an account in said bank upon which said check, draft or order was drawn, thirty days next prior to the time said check, draft or order was delivered, and that said check, draft or order was drawn upon said bank or depository without intent to defraud the party receiving the same, and if the court shall so find, said action shall be abated and the defendant shall be discharged upon paying into the court the amount of such check, draft or order and the costs in such case." This section enables the defendant, after prosecution has been initiated, to pay the amount of the check, draft, or order involved, or show that he had sufficient funds in the said bank within thirty days next prior to the issuance of the check and did not intend to defraud the party receiving the same, and upon such showing to be discharged. Under the provisions of this section the defendant has his choice. He may make satisfaction as therein provided, or, upon failure to make such satisfaction, he must suffer the penalty provided in section 2. The question then becomes, is the penalty provided by section 2 inflicted for issuing the bad check or for failure to make satisfaction as provided under section 3? Under our view of the case, the penalty is inflicted for failure to make such satisfaction, and this view is strengthened by the provisions of section 5 of the law which reads as follows: "It is further provided that nothing in this act shall apply in cases where checks, drafts or orders were actually honored by the bank or banks or depository or depositories on which they were drawn." This section is as much a part of the law as either of the others and must be read and considered in construing the entire law. In view of this section, the execution and delivery of the check by the defendant does not constitute a complete offense. It

is not until the check has been presented at the bank or after maturity and payment refused for lack of funds that the crime was complete; therefore the penalty fixed by the law is for failure to pay the check rather than for issuing the check. We can see no escape from this conclusion.

Our attention is called to the fact that the state of Kansas has a Bad Check Law (chapter 92, Kans. Laws 1915) which was in force when our law was enacted, and that our law is so nearly an exact copy of that law that it was necessarily copied from the Kansas law; and our attention is also called to the fact that, prior to the adoption of our law, the Kansas law had been construed by the Supreme Court of that state and held to be constitutional and effective in every way. State v. Avery, 111 Kan. 588, 207 P. 838, 839, 23 A. L. R. 453, and the Attorney General invokes the rule that, where one state adopts a law from a sister state that has already been construed by the Supreme Court of that state, we not only adopt the law, but also adopt the construction that has been put upon it by the state from which it was adopted. We are familiar with this rule; but the construction put upon that law by the Kansas court is not binding upon us, unless we feel that such construction is sound and based upon reason. In this case, we do not think the construction put upon this law by the Supreme Court of Kansas is sound. In the opinion of the court in State v. Avery no notice is taken of the provisions of section 5 of their law, except to mention the existence of such section, which is exactly the same as section 5 of our law.

In the opinion in State v. Avery, the Kansas court say: "The purpose of the statute was to discourage overdrafts and resulting bad banking, (Saylors v. Bank, 99 Kan. 515, 518, 163 P. 454), to stop the practice of 'check kiting,' and generally to avert the mischief to trade, commerce, and banking which the circulation of worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense."

We are not able to agree in full with this part of the opinion. In the first place this law has no application to overdrafts; because unless the check is honored, there can be no overdraft, and, if the check is honored, then no offense was committed

by issuing the check. And, if the law was intended to obviate the demoralization of business caused by the circulation of worthless checks, then there would have been no occasion for incorporating sections 3 and 5 into the law. North Dakota has a bad check law, so also have many other states, but so far as we are advised all such laws, except those of North Dakota, South Dakota, and Kansas, make moral turpitude in some form an element of the offense. The North Dakota law makes the issuance of a check against a bank where the maker of the check has not sufficient funds in or credit with such bank to meet the check on presentation a misdemeanor, and the offense is complete as soon as the check is issued. It is not necessary to wait until the check has been presented for payment, and dishonored, before the law applies, and there is no provision in the law whereby, after a prosecution has been instituted, the defendant may pay the face of the check and the costs of prosecution and abate the action. Under this law the penalty provided is for the issuance of the bogus check, and the law is in reality a "bad check" law. See State v. Shock, 58 N. D. 340, 226 N. W. 525, 72 A. L. R. 888. Under the South Dakota and Kansas laws the provisions of section 1 and 2 do not apply until the check has been presented for payment and been dishonored, and then, after a prosecution has been instituted, the defendant may pay the check and the costs and thereby abate the action. Under this law the penalty is for failure to pay the check when presented for payment, and for that reason the law is a "bad debt" or debt collecting law, and violates the provisions of section 15 of article 6 of the Constitution, which prohibits imprisonment for debt founded on contract. This is especially true as to a postdated check which in effect is only a representation by the drawer that he expects to have funds in the bank with which to pay the check on the date named therein. In this respect there is no essential difference between a postdated check and a promissory note, and there is no difference in principle between prescribing a prison sentence for failure to pay a promissory note when due and failure to pay a postdated check when due. Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256.

We believe the purpose of this law to be, and certainly its effect is, to use the criminal processes of the court to enforce the collection of debts, and as applied to postdated checks it is uncon-

stitutional. As to whether it is unconstitutional when applied to a present dated check, or a check given for a present valuable consideration, we express no opinion at this time.

The order appealed from is affirmed.

CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

ROBERTS, J., disqualified and not sitting.