[Civ. No. 8339. First Appellate District, Division Two.—February 24, 1932.]

In the Matter of the Estate of J. FRANK SILL, Deceased. EMMA F. SILL, Respondent, v. OLIVE KENNEY, Appellant.

 

J. E. Hood for Appellant.

Snook & Snook & Chase for Respondent.

SPENCE, J.—Respondent, the surviving widow of the deceased, petitioned for an order setting apart a probate homestead claiming that the property was community property. Appellant, a daughter of the deceased by a former marriage, filed her written objections denying that the property was community property. Upon the hearing the trial court found that the property was community property and ordered that it be set apart as a homestead for the use of respondent and that said property should belong to said respondent. Appellant appeals from said order.

The sole contention made on this appeal is that the evidence was insufficient to support the finding that the property was community property. In our opinion this contention is without merit.

Respondent and the deceased were married in 1909. Each had been married previously and each had children by such former marriage. It appears that both respondent and the deceased had some property at the time of their marriage and that each thereafter kept a separate bank account. The deceased was a police officer and continued as such until 1913, when he was retired. His only income thereafter was from the rentals from his separate property in Oakland and from his police pension. The Santa Clara County property here involved was purchased in 1919 for the sum of $2,800. The deposit on the purchase price was made by the deceased, but the evidence does not clearly show whether this sum advanced as such deposit was community property or the separate property of the deceased. Nevertheless it was stipulated by counsel at the opening of the hearing that the $500 in cash contributed by the deceased on the purchase price was from his separate funds. Respondent agreed to and did contribute $500 in cash from her separate

funds and the balance of $1800 was raised by placing a mortgage upon the separate property of the deceased in Oakland. Apparently nothing was said regarding the manner of taking title to the property in the preliminary conversations between the deceased and respondent. After the deposit had been made the real estate agent asked the deceased, ''Shall I put this in your wife's name?'' Deceased made no answer, but respondent spoke up and said, ''It doesn't make any difference.'' As the parties left the real estate office deceased said to respondent, ''Don't feel bad about it, you know it is just as much yours as it will be mine; this is our home.'' The property was conveyed to the deceased and was thereafter used as the home of the parties. Deceased paid the taxes and also paid for certain improvements while other improvements were paid for out of the separate funds of respondent. It does not appear that the $500 originally paid by respondent on the purchase price or the sums thereafter paid by respondent for improvements were ever repaid to her or that there was any agreement or understanding between the parties that said sums should ever be repaid.

Conceding that the entire purchase price of the property was made up from the separate property of both deceased and respondent, we are nevertheless of the opinion that there was ample evidence to justify the finding and conclusion that the property in question became the community property of the spouses. ▪ Without regard to the presumption found in section 164 of the Civil Code, it is well settled that the separate property of either or both spouses may be transmuted into community property and this may be done without the necessity of any written agreement providing the agreement or understanding to that effect is fully consummated. (*Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214] ; *Title Insurance & Trust Co.* v. *Ingersoll,* 153 Cal. 1 [94 Pac. 94] ; *Estate of Wahlefeld,* 105 Cal. App. 770 [288 Pac. 870] ; *Vieux* v. *Vieux,* 80 Cal. App. 222 [251 Pac. 640] ; *Martin* v. *Pritchard,* 52 Cal. App. 720 [199 Pac. 846].) It clearly appears from the foregoing authorities that the agreement or understanding between the parties is not required to be in any particular words and need not be attended with any particular formality as long as it may be fairly inferred from all of the circumstances

in evidence that a community interest was intended by the parties. In *Estate of Wahlefeld, supra,* the court said at page 776: "In the present case there was a meeting of the minds and any form of expressed words, either spoken or written, that the property was to be considered community property was sufficient." In *Martin* v. *Pritchard, supra,* the court said at page 724: "That the wife had an interest in the property is very clear. What the character of that interest was is not so certain. The court came to the conclusion, on a balancing of probabilities, that a community interest was intended by the parties. It cannot be said that the court's finding had no support in the evidence."

In the present case respondent contributed her separate property along with the separate property of the deceased to acquire and improve a place to be used as their home. It does not appear that they had previously given any thought to whether the property should be conveyed to the deceased or to respondent or to both of them. When confronted with making this decision deceased said nothing and respondent said it made no difference. Immediately thereafter deceased assured respondent that "It is just as much yours as it is mine; this is our home." While the parties did not formally agree in precise words that the property should be community property, it is a fair inference from all the circumstances that such was their intention and understanding.

The order is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21, 1932.