**85 P.2d 78**

**McDONALD v. LAMBERT et al.**

**No. 4380.**

Supreme Court of New Mexico.

Nov. 5, 1938.

Rehearing Denied Dec. 19, 1938.

Lake J. Frazier, of Roswell, for appellant.

Margaret Neal and Tom W. Neal, both of Santa Fé, and J. D. Atwood, of Roswell, for appellees.

BRICE, Justice.

This suit was brought by appellant to establish in her, title to an undivided one-half interest in three hundred and twenty acres of land, the legal title to which is in the appellee. The parties had been husband and wife, and were divorced without a settlement of their property interests.

The principal question, and the only one necessary to a decision, is whether at the time the parties were divorced the real estate in question was community property.

On the 14th of February, 1916, the appellee filed a United States homestead entry on the land in question, and thereafter complied with the law with reference to settlement, improvements, and residence, until appellee and appellant were married, in January, 1917. The parties thereafter made their home on the land, until it was subject to patent. The necessary proof was made, and on February 5, 1920, the land was patented to appellee.

Under these facts the land is the separate property of the appellee. We held in Citizens' National Bank v. Ruley, 29 N. M. 662, 226 P. 416, that the title of an entry-man to a United States homestead entry, upon receiving patent, dates from his settlement upon the land. As the parties were not married at the time the appellee made his entry and settlement, the land did not become community property. The Supreme Court of Louisiana held otherwise in Doucet v. Fontenot, 165 La. 458, 115 So. 655; though the Louisiana court seems to be alone in this holding. Card v. Cerini, 86 Wash. 419, 150 P. 610; In re Lamb's Estate, 95 Cal. 397, 30 P. 568; Humbird Lumber Co. v. Doran, 24 Idaho 507, 135 P. 66.

The evidence in support of the claim that the property belongs to the community was the following testimony of appellant:

"Q. Did you have any conversation with him about coming out to live on this claim? A. Yes, sir.

"Q. What was that conversation? A. All the time we were engaged we talked of this as being our future home. It was discussed that if I came out there to live, helped look after it, it would be part mine.

"Q. Did you come out then and live on the homestead with him? A. Yes, sir.

"Q. What was the condition of the homestead when you got there? A. Well, we lived first in a dug-out, and then we went from that to a little one-room house and continued in this little one-room house under lots of difficulties and hardships."

It is claimed that the alleged contract is authorized by the terms of the following statutes:

"Husband and wife may make contracts. Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other." Sec. 68-201, N.M.Sts.Ann.1929.

"A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children during their separation." Sec. 68-510, N.M.Sts.Ann.1929.

"Consideration for agreement of separation. The mutual consent of the parties is a sufficient consideration for such an agreement as is mentioned in the last section." Sec. 68-511, N.M.Sts.Ann.1929.

By Ch. 37, N.M.L.1907, this state adopted certain California statutes regarding the relation and property rights of husband and wife; among which were the statutes quoted. It is said that we are bound by the construction placed upon these statutes by the courts of California, hereafter to be noted.

It is a general rule, based upon a presumed intent, that the adoption of a statute from another state includes its prior construction by the courts of that state, Marlin v. Lewallen, 276 U.S. 58, 48 S.Ct. 248, 72 L.Ed. 467, and the presumption is strong that the legislature did so intend, Union Oil Associates v. Johnson, 2 Cal.2d. 727, 43 P.2d 291, 98 A.L.R. 1499, but the rule is not absolute. Kraus v. Chicago, B. & Q. R. Co., 8 Cir., 16 F.2d 79; Phoenix Title & Trust Co. v. Old Dominion Co., 31 Ariz. 324, 253 P. 435, 59 A.L.R. 625; O'-Malley Lumber Co. v. Martin, 45 Ariz. 349, 43 P.2d 200; In re Waldron's Estate, 84 Colo. 1, 267 P. 191; State v. Callow, 78 Mont. 308, 254 P. 187; Hard v. Depaoli, 56 Nev. 19, 41 P.2d 1054; State v. Nelson, 58 S.D. 562, 237 N.W. 766, 76 A.L.R. 1226; State v. Olsen, 76 Utah 181, 289 P. 92; 59 C.J. title "Statutes" Secs. 627 and 628.

In Palmer v. Farmington, 25 N.M. 145, 179 P. 227, we stated [page 230]:

"This statute was taken, as stated, from the state of Arkansas, and this identical section appears as section 5322, Sandel & Hill's Dig.1894. The rule is that where a statute is adopted from another state, and such statute has previously been construed by the courts of such state, the statute is deemed, as a general rule, to have been adopted with the construction so given to it by the courts of the state from which it was taken. Lewis' Sutherland's Stat. Const. § 404. In the case of Dow v. Simpson, 17 N.M. 357, 132 P. 568, this court said:

"'As our statute, however, was taken from the state of Washington verbatim, it is our duty to give to it the judicial construction placed upon it by the Washington court, as the presumption is that our Legislature, in adopting it, also intended to adopt

the judicial construction placed upon it by the courts of that state.' "

In the case of Armijo v. Armijo, 4 Gild. 57, 13 P. 92, the court said [page 95]: "It is a familiar rule of law, that where one state or territory adopts a statute in force at that time in such state or territory, it also adopts the construction by the courts of such state or territory, *unless for some good reason* the courts of the state or territory *adopting the statute should see proper to refuse to follow such decisions as sound interpretations of the statute.*"

█ It will not be presumed that the legislature intended to adopt a construction not in accord with sound reasoning, common sense (Phoenix Title & Trust Co. v. Old Dominion Co., supra; State v. Callow, supra), *or that would render the statute* inconsistent with other laws intended to be retained, or the public policy of the adopting state. Beals v. Ares, 25 N.M. 459, 185 P. 780.

In the Beals Case we construed the statutes adopted from California by Ch. 37, N.M.L.1907, and refused to follow the construction of the California courts, *which had held that the community property and its increase belonged to the husband; that the wife had a "mere expectancy," which did not amount to a present estate or interest therein. Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228, 36 L.R.A. 497, 58 Am. St.Rep. 170; In re Brix' Estate, 181 Cal. 667, 186 P. 135. This court held that the wife's interest in community property was present, vested and equal to that of the*

husband; that the construction of the statute by the California courts, if followed, would render them inconsistent with other New Mexico statutes. In 1927 the legislature of California amended its laws with reference to community property so that the wife now has a present, vested interest therein, equal to that of the husband.

·██ All property owned by either husband or wife before marriage, and that acquired after, by gift, bequest, devise or descent, with its rents, issues and profits, is his or her separate property, and all other property acquired during marriage by the husband, wife or both, is community property. The status of such property is fixed by law as of the time of its acquisition and remains so until changed by means, and in a manner, authorized by law.

The Supreme Court of California, in Yoakam v. Kingery, 126 Cal. 30, 58 P. 324, decided in 1899, in construing statutes identical with our sections numbered 68-201 and 68-510, held that a husband and wife could alter the legal relations as to property so as to transmute separate into community property. That court said [page 325]: "Husband and wife may, by contract with each other, 'alter their legal relations as to property' (Civ.Code, §§ 158, 159) ; and we see no reason to doubt that the contract of Yoakam and wife was sufficient to transmute the separate estate of either of them into community property, if it was properly executed. Counsel for defendant maintain, however, that such contract rested in parol, whereas a change so radical in the char-

acter of the estate in the land could be effected by writing only. But it is to be inferred from the record that the agreement of Yoakam and wife was a written contract and duly executed. The finding is that they 'agreed' that the property standing in the name of either of them was community property. In McDonald v. Association, 51 Cal. 210, a finding that a contract to sell real estate had been made was held to import that it had been made in writing; and the decision in Lewis v. Kelton, 58 Cal. 303, was to very similar effect. We must hold that the finding here of the agreement between plaintiff and his wife means a valid and effectual agreement, not one invalid or void."

Subsequent decisions of the California courts have extended the doctrine in California so that now the separate property of either husband or wife may be transmuted into community property by agreement of the parties; that it need not be made in writing, if fully performed; that it may be made either prior to, and in anticipation of marriage, or subsequent to marriage; that transmutation can be accomplished if there is a meeting of the minds; and the use of any words, either spoken or written, to the effect that the property is to be considered community property, is sufficient. In re Henderson's Estate, 128 Cal.App. 397, 17 P.2d 786; Vieux v. Vieux, 80 Cal.App. 222, 251 P. 640; Perkins v. Sunset, etc., Co., 155 Cal. 712, 103 P. 190; Carlson v. Carlson, 10 Cal.App. 300, 101 P. 923; Martin v. Pritchard, 52 Cal.App. 720, 199 P.

846; all decided subsequent to our adoption of these statutes.

The danger resulting from the holdings of the California courts is illustrated in Re Henderson's Estate, supra, where, subsequent to the death of her husband, a widow testified that an oral agreement was made between her husband and herself, to the effect that the husband's separate property should be transmuted into community property; by virtue of which she claimed a community interest. In that case the court stated [page 787]:

"Appellant relies upon her own testimony almost without corroboration to establish a parole transmutation of the Lingard ranch from separate to community property. Henderson, the only person who could testify as to whether or not these conversations occurred, and what was said, is dead. Mrs. Henderson has a very personal and financial interest in the outcome of the controversy between herself on the one hand and the son of her deceased husband on the other.

"As Mr. Justice Burnett said in the case of Turman v. Ellison, 37 Cal.App. 204, 208, 174 P. 396, 398: 'Indeed, it is true that actions to enforce oral agreements claimed to have been made with persons who are dead involve a dangerous assault upon property rights, and they are often supported by false testimony, and they naturally and reasonably excite suspicion. And while they may be genuine and worthy of confirmation, they require the closest and most careful scrutiny to prevent injustice being

done. Wall's Appeal, 111 Pa. 460, 5 A. 220, 56 Am.Rep. 288. They afford and carry opportunity for fraud against the estates of deceased persons and a great temptation to perjury on the part of disappointed or avaricious relatives. Hinkle v. Sage, 67 Ohio St. 256, 65 N.E. 999. Such considerations could not be laid out of view by the trial judge.'"

· The Supreme Court of California has not affirmatively approved, in their entirety, the holdings of the appellate courts whose construction of the statutes has so extended the doctrine of Yoakam v. Kingery, supra. The latest expression of that high authority, so far as we are advised, is the following from Kenney v. Kenney, 220 Cal. 134, 30 P.2d 398, 399:

"This finding is amply supported by evidence tending to show an executed oral agreement between the parties that all property owned by them at the time of marriage and all property subsequently acquired should be community property. That such an executed oral agreement serves to change the status of property from that of separate to community is now well settled. Estate of Sill, 121 Cal.App. 202, 204, 205, 9 P.2d 243, 244; Estate of Wahlefeld, 105 Cal.App. 770, 775, 776, 288 P. 870; Vieux v. Vieux, 80 Cal.App. 222, 226, 227, 251 P. 640; Martin v. Pritchard, 52 Cal.App. 720, 724, 199 P. 846. In Estate of Sill, supra, it is stated: 'Without regard to the presumption found in section 164 of the Civil Code, it is well settled that the separate property of either or both spouses may be trans-muted into community property and this may be done without the necessity of any written agreement providing the agreement or understanding to that effect is fully consummated.'

"In the instant case the respondent testified that the parties had orally agreed, both before and after marriage, that all property then owned by them or subsequently acquired was to belong to them equally, or, as respondent put it, 'fifty-fifty.' That this agreement not only existed between the spouses but was, in fact, consummated by them during their marital life, is established and confirmed by their acts and conduct during that period in their dealings and transactions, appearing at length in the transcript, concerning the selling, purchasing, mortgaging, and improving of said properties."

The authority of husband and wife to contract with reference to community property is in section 68-201, N.M. Sts., supra, and is in the following words, "Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried * * *." Sec. 68-510, supra, does not extend the right to contract regarding property except the authority to enter into separation agreements. The statement "A husband and wife cannot by any contract with each other alter their legal relations, *except of their property* * * *," has reference to the authority given them to contract in Sec. 68-201, and authority to make separa-

tion agreements; and does not extend the power beyond that specifically given. Sec. 68-511 has reference solely to the separation agreement provided for by Sec. 68-510, and has no other reference to their authority to contract.

■ The law fixes the status of the separate and community property of husband and wife, as of the date of its acquisition (Bias v. Reed et al., 169 Cal. 33, 145 P. 516), and it cannot be changed by the parties, either individually or jointly, except to the extent authorized by law. We find nothing in these statutes permitting the parties to transmute separate property into community property by a mere statement between themselves, without regard to its character as defined and fixed by law.

■ Undoubtedly separate property may be conveyed by one spouse to the other; or if community funds are used to purchase the separate property of either husband or wife, such property would become community. But a purported gift to the community of the separate property of either party will not make it community property, nor will a contract to convey separate property to the community for which the consideration is furnished by the husband or wife make it community property. This would amount to a gift, and the parties would hold it as joint tenants or tenants in common (Sec. 68-301, N.M.Sts.1929) as the facts would warrant.

In Kellett v. Trice, 95 Tex. 160, 66 S.W. 51, the Supreme Court of Texas stated [page 54]: "* * * Therefore the question whether particular property is separate or community must depend upon the existence or nonexistence of the facts, which, by the rules of law, give character to it, and not merely upon the stipulations of the parties that it shall belong to one class or the other. Thus, when one spouse passes to the other by gift his or her title to separate property, it could not become the community property of both, because the law declares that property so acquired shall be the separate property of the donee; and a gift by the husband to the wife of his interest in community property would become the separate property of the donee for the same reason. And so property acquired in the name of either spouse during marriage, otherwise than by gift, devise, or descent, or in exchange for separate property, would, by force of the statute, be community property. It is true that in the acquisition or afterwards the husband may give to the wife all his interest in the property, and thus, by gift, make it hers; but at last this would be true only because the facts defined in the law exist, and the separate right is derived through a gift, the husband having full power over the community estate."

This is the view we take of the meaning of these statutes. The fact that a wife under the laws of Texas has not the broad power to contract given by the New Mexico statutes, is beside the case. The statutes of each are substantially the same in defining separate and community property of husband and wife, or so nearly so that the

authority of the supreme court of Texas on that question is applicable here.

We therefore hold that the parties cannot transmute separate into community property by the mere will of the parties. The means and manner of acquisition must be such that it was community property within the meaning of the law at the time it was acquired, even if from husband or wife.

We do not subscribe to the doctrine of the California courts that Sec. 68-201 has application to contracts made prior to marriage. Such contracts are to be construed under rules of the general law, or are governed by Sec. 68-203, N.M.Sts.1929, which is: "All contracts for marriage settlements and contracts for separation, must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed and acknowledged or proved."

It appears from the evidence that at the time the alleged contract was made the parties had been engaged to be married for some time; from which the district court concluded that it was a marriage settlement, and void because not in writing.

It is true that the statute of frauds is not applicable to a parol antenuptial contract of marriage when fully executed by both parties, as appellant asserts, Ferrell v. Stanley et al., 83 Kan. 491, 112 P. 155, 33 L.R.A.,N.S., 777; Freitas v. Freitas et al., 31 Cal.App. 16, 159 P. 611; but here we find proof only of a declaration of the appellee made before marriage, that the land in suit would be their future home; and that, it was discussed that "if I came out there to live, helped look after it, it would be part mine." Assuming that going to their home to help "look after it," was sufficient consideration to constitute a valid contract, which may be doubted (Sec. 68-102, N.M.Sts.1929; Frame, Ex'r, v. Frame, 120 Tex. 61, 36 S.W.2d 152, 73 A.L.R. 1512, and annotations at page 1518 et seq.), we find no agreement to give appellant an interest in the homestead entry. A mere statement or declaration that on certain conditions the property would be community; a declaration that might well be an assumption of law that appellant would have a community interest in the land if she should live on it and help to take care of it; does not constitute a contract. Courts have differed on the question of whether United States homesteads are community property, if entry is made before marriage, and appellee may have mistaken the law.

We stated in Girard v. Girard, 29 N.M. 189, 221 P. 801, 803, 35 A.L.R. 1493:

"We set off to consider such contract with the well-established rule of construction in mind that, in instances of this kind, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends; they will not come to the aid of such contracts so as to deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away,

and, to reach such a conclusion, the contract must not be of doubtful interpretation, but must, by express terms or by necessary implication, clearly so provide. * * *

"Necessary implication, in the sense that it is here used, means so strong a probability of intention that an intention to the contrary or otherwise than that imputed to appellant cannot be reasonably supposed."

In Bias v. Reed, supra, 145 P. 519, it is stated:

" * * * This court has, on several occasions, expressed the view that the character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declaration of one of the parties that the property was or was not community property. * * *

"A declaration that the property was community estate might properly be regarded as having some weight, if supported by proof of other facts pointing in the same direction, or if the evidence regarding the acquisition of title were consistent with either the separate or community character of the ownership."

The conversations were too indefinite to constitute a contract that would deprive appellee of his separate property.

But if in fact the conversations constituted a contract, it cannot be enforced; because an agreement (oral or written) to convey an interest in a homestead entry before the entryman is entitled to a patent is forbidden by United States law and is void. Bailey v. Sanders, 228 U.S. 603, 33 S.Ct. 602, 57 L.Ed. 985; Buchser v. Buchser, 231 U.S. 157, 34 S.Ct. 46, 58 L.Ed. 166; Worthington v. Tipton et al., 24 N.M. 89, 172 P. 1048, 1049; U. S. v. Jones, 9 Cir., 242 F. 609. An oral agreement made after title has been obtained, based upon an original invalid agreement, is likewise void. Harris v. McCrary, 17 Idaho 300, 105 P. 558. Local law determines the classification of the property as community or separate, after the entryman is entitled to a patent, McCune v. Essig et ux., 199 U.S. 382, 26 S.Ct. 78, 50 L.Ed. 237; but Federal law prohibits a sale of any interest therein; until the entryman has completed his engagement with the United States and is entitled to a patent. Under local law the property belongs to appellee, Citizens' National Bank v. Ruley, supra; and no agreement of his, made before he was entitled to a patent, for a conveyance of an interest in it, even to a prospective wife, is valid.

As the suit is based upon a claim that appellee, a homestead entryman, agreed before his right to a patent had accrued, that appellant should have an equal interest with him in the homestead, for certain services to be performed, it is absolutely void and not enforcible.

We can find no theory upon which this court could hold that appellant is entitled to any interest in the real estate in question. It was, and has continued to be, the separate property of the appellee.

The decree of the district court should be affirmed, and, it is so ordered.

HUDSPETH, C. J., and ZINN, J., concur.

SADLER, Justice (dissenting).

I disagree with the prevailing opinion almost in every conclusion it announces. This is aside from the objection that most of them are premature. The majority say, "The conversations were too indefinite to constitute a contract that would deprive appellee of his separate property;" and "we find no agreement to give appellant an interest in the homestead entry." The trial court whose function it is to resolve the facts did not so find, deeming the matter immaterial. It expressly disclaimed any intention of so doing by assuming the very fact in issue, the making of the contract. It proceeded to hold it void because deemed an oral marriage settlement in contravention of 1929 Comp. § 68-203, requiring a writing to support such an agreement. Accordingly, my first objection is that the cause is not remanded to the district court for a finding as to the truth of the claimed agreement. If it disbelieves the wife's story of the making of such an agreement, and so finds upon issuable facts, the several other important questions resolved by the majority are removed from consideration.

In like fashion, so it seems to me, these far-reaching legal questions touching marital rights are eliminated from decisive answer upon the present review by the majority's declaration that "the conversations were too indefinite to constitute a contract."

But they do not stop with declaring that what was said and done lacks the dignity of a contract, obviously a good stopping point. They go on to explore legal consequences attaching if the conversations had not been "too indefinite to constitute a contract." In other words, they say there was no agreement; but that even if there had been it is unenforceable because (1) there is no law in New Mexico authorizing husband and wife, either orally or in writing, to transmute separate estate into community property, or vice versa; that the law fixes immutably the status of such property tested by the means of its acquisition and that the parties are powerless to change it; and (2) that the alleged contract, being one to convey an interest in a homestead and having been made before entryman became entitled to patent, is forbidden by the federal law and is void.

Although reluctant to announce views upon questions as to which there is no real occasion for the court at this time to speak, I cannot permit to go unchallenged conclusions deemed erroneous touching such vital matters as the property rights of husband and wife.

First, let us consider the majority's pronouncement that husband and wife are powerless to change the status of separate estate to community property. There is no magic in the mere status of the property of husband and wife, whether separate or community. It is within the province of

the legislature to permit husband and wife to deal with such property as it sees fit or to restrict their dealings in respect of such property as it may prescribe. It has limited the husband's right to convey community real estate without the wife's joinder, 1929 Comp., § 68-403; and has withheld from the wife predeceasing her husband the power of testamentary disposition over her share of the community. Id., § 38-104. But it has given to both husband and wife plenary power to contract with each other. Sections 68-201 and 68-510 of the New Mexico Statutes Annotated read:

"68-201. Husband and wife may make contracts. Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occuping confidential relations with each other. L. '07, Ch. 37, § 4; Code '15, § 2750."

"68-510. How far may alter their legal relations. A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children during their separation. L. '07, Ch. 37, § 5; Code '15, § 2782."

They were enacted as sections 4 and 5 of chapter 37, New Mexico Session Laws of 1907. The majority say we adopted the statute from California. This seems likely from the almost identical language employed. If we did, we also adopted the construction theretofore placed on the statute by the Supreme Court of California in Yoakam v. Kingery, 126 Cal. 30, 58 P. 324, and In re McCauley's Estate, 138 Cal. 546, 71 P. 458. In the McCauley Case, decided four years prior to the time we enacted section 68-201 (of which § 158, Cal.Civ.Code is almost an exact counterpart) the Supreme Court of California said [page 459]: "The right of the husband to convey property to his wife is as complete as his right to convey to any other person. Section 158, Civ.Code; Hamilton v. Hubbard, 134 Cal. [603], 606, 65 P. 321, 66 P. 860; McDougall v. McDougall, 135 Cal. 316, 67 P. 778. In this state a husband and wife may, by contract between them, alter their relations as to property; and they may, by valid agreement, transmute their separate estate into community property. Yoakam v. Kingery, 126 Cal. 30, 58 P. 324, and for like reason may transmute their community property into the separate property of one of the contracting parties."

It is a cardinal rule of statutory construction, recognized in early territorial days and adhered to consistently since statehood, that in adopting the statute of a sister state the legislature adopts the construction theretofore placed upon it by the highest court of such state. The rule rests upon presumed legislative intent. Armijo v. Armijo, 4 Gild. 57, 13 P. 92; Perea v. Colorado National Bank, 6 N.M. 1, 27 P.

322; Lutz v. Atlantic & Pacific R. Co., 6 N.M. 496, 30 P. 912, 16 L.R.A. 819; Reymond v. Newcomb, 10 N.M. 151, 61 P. 205; De Baca v. Wilcox, 11 N.M. 346, 68 P. 922; Romero v. Atchison, T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37; Bremen Min. & Mill. Co. v. Bremen, 13 N.M. 111, 79 P. 806; Dow v. Simpson, 17 N.M. 357, 132 P. 568; Palmer v. Town of Farmington, 25 N.M. 145, 179 P. 227; In re Vigil's Estate, 38 N.M. 383. 34 P.2d 667, 93 A.L.R. 1506.

I am not unmindful of the qualification of the rule noticed in Armijo v. Armijo, supra, quoted in the prevailing opinion, that for good reasons the courts of the adopting state may refuse to follow the construction theretofore given such statute by the courts of the state from which adopted. It is to be mentioned that in the Armijo Case the territorial court, while noticing the exception, followed the general rule. It is a sufficient reason for rejecting a prior construction·with the adoption of a statute that it is unreasonable or that it is opposed to the public policy of the adopting state. It must be a reason strong enough to overthrow the presumed legislative intent (and the presumption is strong, Union Oil Associates v. Johnson, 2 Cal.2d 727, 43 P.2d 291, 98 A.L.R. 1499) that in adopting the statute it adopted its previous construction in the sister state. Certainly, it cannot be said that the previous holding of the California Supreme Court that this statute authorized an agreement between husband and wife, transmuting separate estate into community property and vice versa, is contrary in any wise to our public policy. The majority do

not so assert. They merely apprehend dangers from the claimed extension of the doctrine arising since the asserted adoption and recognized both by decisions of the California District Court of Appeals and by the Supreme Court of that state. See In re Henderson's Estate, 128 Cal.App. 397, 17 P. 2d 786; Martin v. Pritchard, 52 Cal.App. 720, 199 P. 846; Vieux v. Vieux, 80 Cal. App. 222, 251 P. 640; In re Wahlefeld's Estate, 105 Cal.App. 770, 288 P. 870; Perkins v. Sunset Tel. & Tel. Co., 155 Cal. 712, 103 P. 190.

The only danger pointed out by the majority is that reflected in the portion of the opinion quoted by them from In re Henderson's Estate, supra, viz., the recognition of oral agreements claimed to have been made with deceased persons. However, in that very case, the oral agreement being completely executed was enforced. I fail to see the claimed extension of the doctrine in California save in this particular. The two cases decided by the California Supreme Court before our enactment of the statute, Yoakam v. Kingery and In re McCauley's Estate, supra, dealt with written agreements for transmuting property; in the Yoakam Case one converting separate estate into community property and in the McCauley Case vice versa.

Even though the majority apprehend danger from the subsequent California decisions which hold that a completely executed oral agreement between husband and wife accomplishing such transformation is valid and enforceable, this affords no logical ground for rejecting the construction at-

tending the claimed adoption, to-wit, that our section 68-201 (Cal.Civ.Code, § 158) authorizes an agreement of transmutation between the spouses.

Indeed, I am willing to concede that § 68-201 does not profess to speak upon the question whether the contracts between husband and wife there authorized shall be oral or in writing. They are simply empowered to make any contract between themselves regarding property which either might if unmarried, etc. The form of any such contract necessarily is left to governing general or statutory law. Yet unwarranted apprehensions, it seems to me, entertained by the majority respecting an oral contract of the kind here involved, have driven them to a holding that the statute does not authorize such a contract even though it be in writing.

The prevailing opinion places chief reliance on the case of Kellett v. Trice, 95 Tex. 160, 66 S.W. 51, holding husband and wife are powerless to change the status of property from separate to community. But the significant fact that Texas apparently had no statute conferring such broad powers of contracting upon husband and wife as our § 68-201, although conceded by the majority, is dismissed with the remark that this weighty circumstance is "beside the case." I think it controls the case relied upon.

Now what is the effect of the majority holding? They must concede that plenary power exists in husband and wife to make conveyances inter vivos. 1929 Comp., §

68-403; McDaniel v. McDaniel, 36 N.M. 335, 15 P.2d 229; Trigg v. Trigg, 37 N.M. 296, 22 P.2d 119. This power was held to exist even before the amendment to § 68-403 by L.1927, c. 84. McDaniel v. McDaniel, supra. In this case we said [page 232]: "The amendment of 1927 added nothing to the powers already possessed by husband and wife as to dealings between themselves. Chapter 84, Laws of 1915, did not as respects dealings between husband and wife repeal or modify the provisions of sections 68-201, 68-510, 68-511, Comp.1929 (sections 4, 5, and 6, c. 37, Laws 1907), which specifically authorize separation agreements and empower husband and wife to enter into any engagement with the other, respecting property, which either might, if unmarried. Construing identical statutes in Sanguinetti v. Sanguinetti, 51 Cal.App. 347, 196 P. 799, 801, the California Court of Appeals said: 'The plain terms of the statute authorize the husband or the wife to convey to the other all title and interest in either separate or community property.'. See, also, Brown v. Brown, supra [83 Cal.App. 74, 256 P. 595]; and Chadwick v. Chadwick, supra [95 Cal.App. 690, 273 P. 86]."

Henceforth, if the husband possessing separate estate agrees with the wife it shall become a part of the community, notwithstanding the plenary power to contract given by § 68-201 (held sufficient by the California Supreme Court to authorize just such an agreement), he is powerless to effectuate his purpose. A written agreement duly acknowledged and placed of record reciting that he holds title to his separate real estate

as a part of the community is unavailing to make it so or to require the wife's joinder in any attempted conveyance thereof. It is still his separate estate. If he convey an undivided half interest to the wife by a deed containing recitals that the purpose of the conveyance is to attach community character to the entire interest and to be henceforth treated as such, his act is futile. The deed is either abortive as attempting an impossible thing or the wife takes the one-half interest as her separate estate and may convey without the husband's joinder, freed of the conditions recited. .

I don't believe this is the law. I think it out of harmony with the true purpose sought to be accomplished by the enactment of § 68-201. It is contradicted by the re-emphasized declaration of legislative intent present in L.1927, c. 84 (§ 68-403) expressly authorizing deeds directly from husband to wife or vice versa. This is the true view unless, as I affirm is not the case, there is some magic formula present in the mere status or character of community property which spouses are powerless to create or duplicate by contract. I do not think the majority so contend. They must admit the legislature could authorize what they say is now denied. But the California Supreme Court has said identical language does authorize such an agreement between husband and wife. It already had said so when we enacted this statute. I agree with the California Supreme Court and I think any other view robs the statute of an important element of intent entertained by the legislature at the time of its enactment if, as the majority say, it is an adopted statute. I may add that without the aid of an adopted construction I should reach the same conclusion as to the true meaning of the act. The Supreme Court of Washington, in the case of Foster v. Floyd, 113 Wash. 312, 194 P. 407, under statutes of similar import to ours and to those of California, sustains the right of husband and wife by agreement to transmute property from separate into community and vice versa.

Nor am I out of sympathy with the later California decisions cited supra holding that an oral agreement to the same end fully performed will be enforced. In Caudill v. Caudill, 39 N.M. 248, 254, 44 P.2d 724, 727, we noticed the California rule, saying: "That a husband and wife may change the character of their property from separate to community and vice versa without a written agreement has been asserted by the California courts. See In re Sill's Estate, 121 Cal.App. 202, 9 P.2d 243."

We were not called upon to speak authoritatively upon the subject in the Caudill Case and passed the question except to express the opinion that it was not unreasonable for attorneys to entertain the view that such was the law here. But we have held that under certain conditions complete performance and even part performance would relieve against the rigors of the Statute of Frauds. Harris v. Hardwick, 18 N.M. 303, 137 P. 581; Osborne v. Osborne, 24 N.M. 96, 172 P. 1039. Just why the requirement of a writing in the several instances covered by the Statute of Frauds should be any less sacred than the requirement of a writing

·in marriage settlements and separation agreements (§ 68-203; see Hussey v. Castle, 41 Cal. 239), the majority have not attempted to point out. And yet, as noted above, the absence of a writing is not fatal where certain conditions obtain notwithstanding the requirements of the Statute of Frauds.

Finally, it is said that if the agreement (that the government homestead entry, when acquired, should be deemed community property) is not bad for any of the several reasons already advanced, it violates U.S.C.A., Title 43, Ch. 7, § 162 (R.S. § 2290), requiring an affidavit from entryman containing among other things a statement: "That he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person, except himself, or herself," etc.

None of the cases cited discloses a situation such as that presented in the case at bar. I do not think a case in point can be found. We therefore must decide the question upon principle with such aid as we can find from statements in adjudicated cases.

Buchser v. Buchser, 231 U.S. 157, 34 S. Ct. 46, 58 L.Ed. 166, is cited in the prevailing opinion. It was a bill to quiet title. Plaintiff, a married man, made entry and acquired title under patent to the land in question under the homestead laws of the United States. Thereafter, his wife died and he instituted this suit to quiet title against the children of the marriage as defendants, alleging they claimed an interest in the land. The defendants interposed a demurrer which was sustained by the trial court and in this opinion by Mr. Justice Holmes the judgment of the trial court was affirmed. It is interesting to note that the case arose in Washington, a community property state. The contention was that "by the laws of the state of Washington, in which the property is situated, it became community property unless the statutes of the United States forbid." Among other things, the court said: "In the present case the acquisition under the United States law is complete, and that law has released its control before the state law lays hold, and, upon grounds in no way connected or interfering with the policy of Congress, brings the community regime into play. *The special family relations thus created are not like contracts with third persons impliedly forbidden by the act of March 3, 1891, chap. 561, § 5, 26 Stat. at L. 1097, amending Rev.Stat. § 2290, U.S.Comp.Stat.1901, p. 1389 [43 U.S.C.A. § 162]. They are consistent with the policy of the statute, which is to enable the settler and his family to secure a home. See § 2291, U.S.Comp.Stat.1901, p. 1390 [43 U. S.C.A. § 164]."* (Italics supplied).

U.S.C.A., Title 43, § 164 (R.S. § 2291), gives to the widow, upon the death of the entryman prior to final proof, a preferential right to complete the homestead requirements and make final proof. This right seems to be in no way contingent upon the

time of entry with reference to marriage. Indeed, if entryman had completed all but six months residence on his homestead, then married and died prior to final proof, under this statute it seems his wife could exercise this preferential right. This statute but emphasizes the fact that the fundamental purpose of the public land laws is to provide a home for a man *and his family*. As Mr. Justice Holmes points out in the Buchser Case, it is only by implication at best that an agreement with third persons prior to patent to transfer an interest in the homestead is forbidden by U.S.C.A., title 43, § 162. · To countenance such agreements would defeat the very purpose of the homestead law, viz., to provide a home for the entryman and his family. On the other hand, nothing in an agreement of the sort here involved, that the property should be considered community, impinges on this broad purpose of the homestead laws. Indeed, such an agreement tends to render that purpose more secure. If the property is separate, the husband alone may dispose of it. If community, the wife must join. If there be any difference in the degree of attachment to the home on the part of either husband or wife, the tie is stronger in the wife. Her community interest and the requirement for her joinder in the deed of conveyance might in some instances, and no doubt would, be the very thing that would perpetuate the status of the homestead entry as a home, the purpose intended by the public land laws.

So here, the husband's pre-nuptial agreement, made after entry, that for her aid and assistance in fulfilling the conditions for patent, the wife shall have a community interest in the homestead, may be likened in effect to her growing, though contingent, interest to a like share in the property, even where entered after marriage and classified as community property from the beginning. In both cases the wife's expectant interest is wholly dependent upon the issuance of a patent. Where the entry is possessed of a community character from its inception, as said in the Buchser Case, that fact constitutes no violation of the federal law because inoperative before patent. The moment patent issues the community property law of the state comes into play and perfects the wife's interest. Likewise, such an agreement as that before us remains inoperative and in suspense insofar as the vesting of the wife's community share be concerned, until patent. It then vests in her. And since, in both cases, the result is in furtherance of the aim of the public land laws, the acquisition of a home for the entryman and his family, neither result is proscribed by federal law.

These considerations, in the absence of controlling authorities to the contrary, bring me to the conclusion that this kind of an agreement does not violate either the letter or the spirit of the federal homestead laws.

It follows from what has been said that I disagree with the majority· opinion. I therefore dissent.

BICKLEY, J., concurs.